## ARTHUR W. ANDREWS *vs.* RICHARD KING.

### York.    Opinion June 4, 1925.

*While the Colonial Ordinance of 1641-47 vested the property of flats in the owner of the adjoining upland in fee, in the nature of a grant, such title to the flats was held subject to a general right of the public for navigation until the flats were built upon or enclosed.*

*Such right of navigation so reserved is not simply the right to sail over the flats, when covered with water, to the houses and lands of other men than the owner of the flats; but includes the right of mooring on the flats, of unloading the cargo upon the flats and of transporting it to other men's lands and houses.*

On report on agreed statement of facts. An action of trespass quare clausum fregit brought by plaintiff, owner of land on Saco River, against defendant, owner of a small power boat, in which plaintiff contended that defendant had no right to land passengers from his boat in transporting them for hire from one side of the river to the other, on flats between high and low water marks contiguous to land of plaintiff. The construction of the Colonial Ordinance of 1641-7 is the question involved. The cause was reported to the Law Court on an agreed statement of facts. Plaintiff nonsuit.

The opinion states the case.

*Leroy Haley,* for plaintiff.

*Robert B. Seidel,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, MORRILL, DEASY, STURGIS, JJ.

MORRILL, J. This is an action of trespass quare clausum fregit, submitted upon an agreed statement of facts.

The plaintiff is the owner of certain land on the Saco River, where the tide ebbs and flows, with the flats contiguous thereto and lying in front thereof, to ordinary low water mark which is less than one hundred rods from high water mark. The Saco River is a public highway, and the acts complained of were committed between high and low water mark. The parties agree in their statement as follows:

"That the shore of said river both above and below the premises of the plaintiff is of the same general character as that of the plaintiff's shore, except that the plaintiff's shore at the point where the acts complained of were committed, is at certain stages of the tide the most convenient landing place in the vicinity. That at the point where the acts complained of were committed the public has uninterruptedly used the flats now the property of the plaintiff as a landing place for fifty years next prior to the time of the acts complained of in plaintiff's writ.

"Defendant is the owner of a small power boat and at the time mentioned in plaintiff's writ made use of said boat to transport passengers for hire from one side of said river to the other. That the acts complained of consist of defendant's landing on plaintiff's flats and receiving and discharging passengers therefrom. That such passengers were obliged to travel on plaintiff's flats in order to obtain ingress and egress to defendant's boat. That such passengers were obliged to pass over plaintiff's flats to and from premises other than the premises of the plaintiff to arrive at or leaving a public highway other than said river or land of persons other than the plaintiff. Defendant used said flats as hereinbefore stated and for no other purpose."

Conceding that his title to the flats adjoining the upland owned by him is subject to the public right declared by the Colonial Ordinance of 1641-47, plaintiff thus states his contention upon the brief:

"Plaintiff does not contend that the public have no right to pass and repass over the flats when not covered by water for the purposes reserved by the ordinance, but we do contend that that reservation is limited to 'passage of boats or other vessels to other men's houses and lands,' or for the purposes of fishing and fowling."

If we understand his contention aright, the passage of boats or other vessels over defendant's flats must, in his view, be by boats or other vessels whose destination is "other men's houses and lands." Counsel say in argument:

"The navigation, if such it may be called, in which he (defendant) was engaged consisted only in making plaintiff's land a starting point or destination for his boat and its passengers. He adopted plaintiff's flats as a landing place for his boat, not for passengers navigating to other men's houses and lands, but for the termination of his voyage or for the beginning of another one."

We think this contention unsound. The well-settled construction of the Colonial Ordinance, consistently adhered to by the courts of this State and Massachusetts, is this:

"That it vested the property of the flats in the owner of the upland in fee, in the nature of a grant, but that it was to be held subject to a general right of the public for navigation until built upon or inclosed, and subject also to the reservation that it should not be built upon or inclosed in such manner as to impede the public right of way over it for boats and vessels." *Com.* v. *Alger*, 7 Cush., 53, 79. *Snow* v. *Mt. Desert, etc. Co.*, 84 Maine, 14, 17. *Dyer* v. *Curtis*, 72 Maine, 181, 184. The right of navigation so reserved is not simply the right to sail over the flats, when covered with water, to the houses and lands of other men than the owner of the flats; but includes the right of mooring on the flats, of unloading the cargo upon the flats and of transporting it to other men's lands and houses.

In *Marshall* v. *Walker*, 93 Maine, 532, 536, Mr. Justice HASKELL thus summarized the extent of the public right: "He (the owner) has the right of entry and the right of possession, if he chooses to exercise it. Until he does, the jus publicum remains. Others may sail over them, may moor their craft upon them, may allow their vessels to rest upon the soil when bare, may land and walk upon them, may ride or skate over them when covered with water bearing ice, may fish in the water over them, may dig shell fish in them," except, we may add, when the taking of shell fish is restricted by legislative enactment. *Moulton* v. *Libby*, 37 Maine, 472. *State* v. *Leavitt*, 105 Maine, 76.

So in *State* v. *Wilson*, 42 Maine, 9, 24, it was held that by the proviso in the Colonial Ordinance persons had a right to use the shore of Penobscot River, i. e., between ordinary high and low water mark,

(*Montgomery* v. *Reed*, 69 Maine, 514), in the town of Brewer, where the tide ebbs and flows, including the right of mooring their vessels thereon, and of discharging and taking in their cargoes. And the establishment of a ferry was neither a restriction nor an enlargement of this right. It did not profess to give to the ferryman or his passengers rights which all did not possess before, in the use of the space denominated the shore of the river. The public, however, has no right to deposit upon the upland, without the consent of the owner, the cargoes which may be unloaded from vessels on the flats. *Littlefield* v. *Maxwell*, 31 Maine, 134.

Also in *Deering* v. *Proprs. of Long Wharf*, 25 Maine, 51, 65, it was held that so long as the flats remain open, there is reserved for all the right to pass freely to the lands and houses of others besides the owners of the flats, and that this includes the right of mooring their vessels thereon, and of discharging and taking in their cargoes. The owner of the flats has no power to take away or restrict this right, while the space is unoccupied.

These cases are decisive of the rights of the public and justify the use as a landing place, which has been made of the plaintiff's flats for fifty years. In the pursuit of his private affairs, of business as well as pleasure, the defendant had the right to land on the flats.

*Plaintiff nonsuit*