**Spiros PAPAPETROU**

v.

**Joseph T. EDGAR, Secretary of State.**

Supreme Judicial Court of Maine.

April 27, 1972.

Lloyd P. LaFountain, Biddeford, Edward G. Hudon, Brunswick, for plaintiff.

Leon V. Walker, Jr., Asst. Atty. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

The Secretary of State suspended for three months the license of petitioner, Papapetrou, to operate a motor vehicle. The suspension was imposed after a hearing on the basis of which the Secretary of State concluded that petitioner had been arrested on January 23, 1970 for the offense of operating a motor vehicle while his mental and physical faculties were impaired by the use of intoxicating liquor and had refused to submit to

"a chemical test of the blood alcohol level of his blood or urine for the purpose of determining the alcoholic content of his blood." 29 M.R.S.A. § 1312 (which read in 1970 as provided in P.L.1969, Chapter 439, § 1) [1].

This refusal was held a violation of the requirements of, and subject to the sanctions prescribed by, the aforesaid statute.

---

[1]. By P.L.1971, Chapter 547 the entirety of Section 1312 was repealed and replaced by a new Section 1312 which is the present wording. In the current version the option, as an alternative to a test of the blood, is no longer a chemical test of the urine but has been replaced by a test of the breath. The exact language of the replacement statute is " . . . a chemical test to determine his blood-alcohol level by analysis of his blood or breath, . . . ."

Pursuant to subsection 3 of 29 M.R.S.A. § 1312, as it read in 1970[2] to authorize judicial review of the action of the Secretary of State, Mr. Papapetrou filed a petition in the Superior Court (York County) for review of the decision of the Secretary of State. After hearing, the Superior Court affirmed that decision. The Court found that there had been a lawful arrest of petitioner for alleged operation of a motor vehicle while his mental and physical faculties were impaired by intoxicating liquor and a knowing refusal by him of a chemical test of his blood or urine.

From the judgment of the Superior Court petitioner has appealed to this Court.

The appeal must be dismissed for lack of jurisdiction in the Law Court to review the subject-matter.

■ Whenever the authority of the Law Court to exercise reviewing power is brought into issue the foundational guide to decision is the principle that the Law Court is a statutory Court and its powers to review cases are entirely and exclusively those plainly conferred by statute. Gerrish v. Lovell, 146 Me. 92, 72 A.2d 593 (1951); Semo v. Goudreau, 145 Me. 251, 75 A.2d 376 (1950); Sears, Roebuck and Company v. City of Portland, et al., 144 Me. 250, 68 A.2d 12 (1949); and Carroll v. Carroll, 144 Me. 171, 66 A.2d 809 (1949).

■ Applying this basic concept, we conclude that in the present situation the review of the correctness of license suspension action taken by the Secretary of

State under the so-called "implied consent" law is explicitly specified by controlling statute to *terminate* with the judicial review afforded in the Superior Court. Further review by the Law Court is statutorily excluded.

29 M.R.S.A. § 1312, sub. 3 (as it read in 1970), which is the here operative provision explicitly authorizing judicial review of the action of the Secretary of State under the "implied consent" law, specifies that the judicial review shall be "by the same procedure as is provided in section 2242"—i. e., 29 M.R.S.A. § 2242.

Said section 2242 deals with the authority of the Secretary of State to suspend or revoke licenses to operate motor vehicles, generally, as well as with the judicial review of decisions made by the Secretary of State in the exercise of such authority. It states explicitly that review shall be by the Superior Court, and the Superior Court

"may affirm or reverse the decision . . . and the *decision of the court shall be final.*" (emphasis supplied)

■ We interpret the word, "procedure",—by which 29 M.R.S.A. § 1312, sub. 3 carries into the "implied consent" law various factors operative under 29 M.R.S.A. § 2242,—to be sufficiently comprehensive to embody the specification, as a controlling part of the "implied consent" law, that the decision of the Superior Court shall be "final."

The only issue which remains, then, is the significance of the word "final" in this

2. The subsection dealing with judicial review was rewritten in the 1971 replacement. Essentially, the changes are without relevance for present purposes.

It is worthy of observation, nevertheless, that prior to the changes effected by P.L. 1971, Chapter 547, during the period that the action of the Secretary of State is pending for final decision in a Court review "the license or privilege to operate shall not be suspended."

As the result of P.L.1971, Chapter 547, this explicit provision authorizing the license to be retained while judicial review

is in process has been eliminated. Thus, the provisions of 29 M.R.S.A. § 2242 relating to judicial review of license suspensions imposed by the Secretary of State in cases, generally, including those under the "implied consent" law, have become applicable (by the incorporation by reference contained in the "implied consent" law) because no longer explicitly contradicted, such that: "Pending judgment of the court, the decision of the Secretary of State . . . in revoking or suspending any license . . . shall remain in full force and effect."

context. Petitioner argues that it imports only that the ruling of the Superior Court is "final", as distinguished from "interlocutory", and thereby prescribes that it is thus ripe for judicial review, by appeal, in the Law Court. Petitioner strenuously asserts that the word "final" should not be interpreted to connote that the process of judicial review is *concluded* by the decision of the Superior Court.

We find the contention of petitioner untenable.

In Steves v. Robie, 139 Me. 359, 31 A.2d 797 (1943) this Court, specifically in reference to the question of the extent of judicial review of license revocation or suspension action of the Secretary of State (as under then R.S.1930, Chapter 29 § 46, the equivalent of present 29 M.R.S.A. § 2242), decided that the word, "final", signifies that judicial review does not extend beyond the proceeding in the Superior Court. Review by the Superior Court is the *exclusive*

"method of obtaining judicial determination of the correctness of . . . [the] decision" (p. 363, 31 A.2d p. 799)

of the Secretary of State.

In Hadlock, Petitioner, 142 Me. 116, 48 A.2d 628 (1946) this Court took occasion to advert to the "handling of motor vehicle licenses" as one of many concrete instances in which by statute further judicial review in the Law Court is precluded once there has been a decision by the Superior Court. In Hadlock, Petitioner, supra, it was said:

"It is not always that parties whose rights are dealt with in the Superior Court, or by one of its justices, have a right to resort to this Court sitting as a Court of Law. In some instances the law expressly provides for the finality of decisions made by Justices of the Superior Court. Instances are found in the handling of motor vehicle licenses, R.S. 1944, Chap. 19, Sec. 7, . . . ." (p. 120, 48 A.2d p. 630)

(R.S.1944, Chapter 19 § 7 has now become 29 M.R.S.A. § 2242).

To overcome the controlling effect of these principles petitioner adverts to the general delineation of the jurisdiction of the Law Court promulgated by the language of 4 M.R.S.A. § 57 as revised in 1959 (and subsequently)—when various statutory changes were introduced to effect a correlation with the impact of the new Rules of Civil Procedure.

■ Petitioner argues that the jurisdiction of the Law Court under 4 M.R.S.A. § 57, as revised in 1959 and thereafter, extends to "cases presenting a· question of law." On this basis, petitioner argues that the Law Court has been given explicit jurisdiction to review any case in which "a question of law" is raised.

The argument is without merit.

Steves v. Robie, supra, was decided in 1943 when the jurisdiction of the Law Court, under R.S.1930, Chapter 91 § 9, as amended, was stated to embrace, inter alia, " . . . cases, civil or criminal, presenting a question of law . . . ."

*Hadlock, Petitioner*, supra, was a decision rendered in 1946 when the jurisdiction of the Law Court was generally described in R.S.1944, Chapter 91, § 14 as extending, inter alia, to " . . . cases, civil or criminal, presenting a question of law."

Except for the deletion of the words, "civil or criminal", to modify "cases", the present jurisdiction of the Law Court, in respect to a case "presenting a question of law", is the same as it was at the time of Steves v. Robie, and *Hadlock, Petitioner*, supra.

The deletion of the words, "civil or criminal", is plainly without bearing upon the present issue. This is clear when we advert to the circumstances that notwithstanding that (1) the feature of a case as "civil" was an ostensible prima facie badge that the case was within the review jurisdiction of the Law Court and (2) Steves v.

Robie and *Hadlock, Petitioner*, were clearly "civil" cases, the jurisdiction of the Law Court was *nevertheless excluded* as to the subject-matter of those cases. Thus, that a case was "civil" (or criminal) in nature could not have been the significant criterion governing the exclusion or the inclusion of Law Court jurisdiction.

Some other factor was responsible for the exclusion delineated in Steves v. Robie and *Hadlock, Petitioner*. This factor was the controlling effect of a *separate* statute (rather than the presence or absence of the words "civil or criminal"), which explicitly provided that the decision of the Superior Court in the process of the judicial review of cases pertaining to the suspension of licenses to operate motor vehicles is *"final"*, in the sense that judicial review *ends* with the Superior Court. Nothing in the language of 4 M.R.S.A. § 57, as amended in 1959, or subsequently, has affected the controlling import of this specific statutory exclusion as effected by 29 M.R.S.A. § 2242 and incorporated by reference into 29 M.R.S.A. § 1312, sub. 3 (as operative in 1970).

Furthermore, the effect of this exclusion was unchanged by another statutory amendment in 1959 made in relation to the adoption of the new Rules of Civil Procedure. The change was promulgated initially by P.L.1959, Chapter 317, § 76, (now a part of 14 M.R.S.A. § 1851). The provision is:

"In any civil case any party aggrieved by any judgment, ruling or order may appeal therefrom to the law court within 30 days or such further time as may be granted by the court pursuant to a rule of court."

This statutory change was made as an incident of the establishment of a single form of action in civil cases, identified as a "civil action", and the concomitant procedural merger of law and equity. It was intended only as a further implementation of the objective of consolidation. It produced a single and comprehensive *procedural* method by which the jurisdiction of the Law Court, as otherwise *independently* established in its *substantive* scope, was to be invoked in any civil case. It thus had the effect of eliminating, in terms of appropriate procedure, the prior "three distinct statutory methods for obtaining a review of cases by the Law Court, *motion, exceptions,* and *appeal*" and which were delineated as "not interchangeable" and not "equally applicable to all cases." Sears, Roebuck and Company v. City of Portland, el al., 144 Me. 250, 255, 68 A.2d 12 (1949). There was no intention to enlarge the reach of the Law Court's jurisdiction to review specific subject-matter beyond the scope of review already, and otherwise, statutorily prescribed.

In the present situation, therefore, the doctrine of Steves v. Robie—as further reflected in *Hadlock, Petitioner,*—remains controlling. Judicial review of the subject-matter here involved in confined to the Superior Court. Further review by the Law Court is excluded.

The entry is:

Appeal dismissed.

All Justices concurring.