Roy C. BLANEY

v.

Chetley RITTALL et al. (two cases).

Supreme Judicial Court of Maine.

Nov. 26, 1973.

Nissen & Westcott by Michael N. Westcott, Damariscotta, for plaintiff.

Thompson, Willard, Smith & McNaboe by U. Charles Remmel, II, Portland, Sanborn, Moreshead & Schade by Peter D. Dawson, John M. R. Paterson, Asst. Atty. Gen., Augusta, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEATHERBEE, Justice.

This case originates from the plans of Defendant Brown Brothers, Inc. to extend a wharf on its property in Boothbay Harbor. On January 5, 1972 Brown Brothers, Inc. wrote to the Board of Selectmen of Boothbay Harbor requesting a permit to extend a wharf as indicated on an enclosed plan. Five days later, Brown Brothers, Inc. filed an application form entitled "Application for Permit to Alter Wetlands" with the Wetlands Control Board in Augusta and with the town of Boothbay Harbor. This form stated that the applicant intended to alter wetlands pursuant to certain plans showing the area, the extent of construction and so forth.

A public hearing was held on January 21, 1972 by the Board of Selectmen after publication of a public notice in the local newspaper. On January 31, 1972 the Selectmen granted Brown Brothers, Inc. *permission to alter wetlands*. This permit stated that the Wetlands Control Board had also approved the application on January 28. The entire permit reads as follows:

"Boothbay Harbor, Maine
(Municipality)

Date: January 31, 1972

WHEREAS, under date of January 5, 1972 Brown Brothers, Inc. of Atlantic Avenue
(Owner or Agent)    (Address)
filed with the Wetlands Control Board and with the Municipal Officers of the Municipality of Boothbay Harbor a Notice of Intent to Alter Wetlands, in the Municipality of Boothbay Harbor, bounded and described as follows:
as per attached sketch
and WHEREAS, said Municipal Officers did hold a public hearing on said Notice of Intent to Alter Wetlands at 12:30 P.M. on January 21 1972, in
(time)
the at the site, continued at BH Firehouse, notice
(location)
of said public hearing having been given by mail to Brown Bros. Inc., the Wetlands Control
(Owner or agent)
Board and all abutting owners, and to the public by publication in The Boothbay Register on
(newspaper)
January 13, 1972, and WHEREAS, the Maine State Wetlands Control Board approved said application subject to certain conditions on January 28, 1972, NOW, THEREFORE, the Municipal Officers of the Municipality of Boothbay Harbor hereby grant to Brown Bros., Inc. a permit to undertake the pro-
(applicant)
posal to alter wetlands within the Municipality of Boothbay Harbor as set forth in the Notice of Intention dated January 5, 1972, subject to the following conditions: _____.

Majority of the ⎤ s/Chetley Rittal
Board of        ⎟
Selectmen       ⎬ s/Clarence L. Brewer
or              ⎟
(SEAL)   Councilmen ⎦ s/Walter S. Reed, Jr."

Following the issuance of this permit, the Plaintiff, an adjoining landowner, filed two appeals in the form of complaints authorized by M.R.C.P., Rule 80B. These appeals, directed to the Superior Court, were based on the Wharves and Weirs Statute (38 M.R.S.A. § 1021 et seq.) and Wetlands Act (12 M.R.S.A. § 4701 et seq.), respectively. Joined as Defendants in addition to Brown Brothers, Inc. were the Board of Selectmen of Boothbay Harbor and the Wetlands Control Board.

On September 18, 1972 the Single Justice sitting below filed a decree which dismissed Plaintiff's first appeal. The Justice found that as the Wetlands Act did not repeal by implication the prior-in-time Wharves and Weirs Statute, there had been only one permit issued, that being under the Wetlands Act. Since no action had been taken under the Wharves and Weirs Statute, the Justice found that Defendant had received no permit under that statute, although one was required, and that therefore there had been no action by the Selectmen under this statute from which Plaintiff *could* appeal. Although in effect upholding the Plaintiff's theory, the Justice below *dismissed* the Plaintiff's first 80B appeal and thus the successful party appears from superficial examination to have been the loser.

The next day, September 19, the Plaintiff, apparently adopting the Justice's procedural reasoning, moved to dismiss his appeal based on the Wetlands Act, also claiming that the permit quoted above was void under that statute. The Justice decided that the permit was not valid, as the sketch referred to in the permit was missing and never was recorded and neither was any other description of the property in question. Thus, he ordered that this appeal of the Plaintiff also be dismissed, with prejudice.

Following these two actions of the Justice, the Defendant Brown Brothers, Inc. seasonably filed a notice of appeal. The Defendant appealed

"from the following Orders or portions of Orders designated below:

1. That part only of the Order of the Lincoln County Superior Court signed by [the Presiding Justice] of September 18, 1972 which determines that the Wharf and Weirs Statute, 38 M.R.S.A. § 1022 is not impliedly repealed and superceded by the Wetlands Control Act, 12 M.R.S.A. § 4701 and that the Defendant, Brown Brothers, Inc., is required to obtain a permit under both Acts.

2. That part only of the Order of the Lincoln County Superior Court signed by [the Presiding Justice] of September 19, 1972 which constitutes a judicial determination that the permit of Brown Brothers, Inc. under the Wetlands Control Act, 12 M.R.S.A. § 4701 is not a proper permit and is void under the recorded requirement set forth in 12 M.R.S.A. § 4702."

Thus, the *Defendant's* appeal raises two issues, namely, those of repeal by implication and permit validity. Each will be considered in turn.

Before discussing the first issue on the merits we feel obliged to clarify the procedural situation created by the Defendant's appeal. The Single Justice's two orders of September 18 and 19, 1972, are each in the form of a dismissal of an aspect of the Plaintiff's 80B complaints. On the surface, one would wonder how the Defendant, ostensibly successful at the Superior Court level, could now appeal to this Court from two decrees which were in form, at least, in its favor.[1]

Rather than be bound by form alone, this Court will look closely to ascertain the substance of the lower court decrees. In order to be entitled to appeal from these decrees, the Defendant must meet requirements specified by both statutory and case law. 14 M.R.S.A. § 1851 states that

"[i]n any civil case any party aggrieved by any judgment, ruling or order may appeal therefrom to the law court within 30 days or such further time as may be granted by the court pursuant to a rule of court."

In addition, this Court has ruled that the judgment from which an aggrieved party

---

1. Though not discussed in either party's written brief, this procedural issue was debated at oral argument and is sufficiently important to be raised now by the Court.

appeals must generally[2] be a final judgment. *See, e. g.,* Jandreau v. Rodriguez, Me., 284 A.2d 86 (1971); Fidelity & Casualty Co. v. Bodwell Granite Co., 102 Me. 148, 66 A. 314 (1906).

Both the requirements for an "aggrieved party" and for a "final judgment" have been defined earlier by this Court. In discussing the concept of aggrievance, this Court in Jamison v. Shepard, Me., 270 A. 2d 861, 862–863 (1970), recently stated:

"For aggrievance by a judgment or order, such judgment or order must operate prejudicially and directly upon a party's property, pecuniary or personal rights."

The Court has described a final judgment as one which "fully decides and disposes of the whole cause, leaving no further questions for the future consideration and judgment of the court." Gilpatrick v. Glidden, 82 Me. 201, 203, 19 A. 166, 167 (1889); as one which is "in such a condition that, if there be an affirmance, the court below will have nothing to do but execute the decree already entered." Sawyer v. White, 125 Me. 206, 209, 132 A. 421, 422 (1926); as one whose effect is "in concluding the rights of the party appealing; if his [the appellant's] rights are concluded so that further proceedings after the ruling cannot affect them, there is a final judgment." Hazzard v. Westview Golf Club, Inc., Me., 217 A.2d 217, 222–223 (1966). It is clear that this Court will as a rule review only those cases in which the appellant's rights have been adversely affected by the ruling in which the ruling has been a final one.

We look to the "nature and scope" of the orders of the Justice here to determine whether the basic prerequisites of aggrievance and finality are present.

The Defendant Brown Brothers, Inc. desired to extend its wharf which is situated in tidewater. The legislature had enacted two statutes which appeared to control the action which Brown Brothers, Inc. proposed to take—38 M.R.S.A. § 1022 et seq., which concerns the building or extension of wharves, weirs and traps in tidewaters and 12 M.R.S.A. § 4701 et seq., which controls the alteration of coastal wetlands.

Brown Brothers, Inc. filed two petitions with the appropriate governmental agencies, one seeking approval for its proposed extension under each respective statute. After notice and hearing, the municipal officers, with the approval of the Wetlands Control Board, issued *one* permit to Brown Brothers, Inc., authorizing the applicant to alter coastal wetlands.

This action by the governmental agencies was subject to appeal and the method of appeal is that provided by M.R.C.P., Rule 80B. Plaintiff appealed by bringing two 80B complaints attacking the validity of the approval which Brown Brothers, Inc. had received, and the two complaints were ordered consolidated by the Justice. The Defendant Brown Brothers, Inc. answered and asked that Plaintiff's 80B complaints be dismissed. The Justice then proceeded to rule upon Plaintiff's contention that the one license which Brown Brothers, Inc. received was not, under *either* statute, a valid authorization for Brown Brothers, Inc. to proceed with the extension of its wharf.

The Justice first disposed of the application of the requirements of the Wharves and Weirs Statute. He disagreed with Brown Brothers, Inc.'s contention that the enactment of the Wetlands Act had resulted in an implied repeal of the Wharves and Weirs Statute and ruled on September 18, 1972 that the license which Brown Brothers, Inc. had received did not consti-

---

**2.** Certain exceptions to the "final judgment" rule have evolved. These involve questions of collateral orders, multiple party claims, interlocutory reports and, possibly, injunctions.

For a detailed discussion, *see* Field, McKusick, and Wroth, Maine Civil Practice §§ 73.2–73.5 (Supp.1972).

tute an approval of its proposed activity under the Wharves and Weirs Statute. He then "dismissed" this aspect of Plaintiff's 80B appeal.

The following day the Justice considered the validity of Brown Brothers, Inc.'s permit as it relates to the demands of the Wetlands Act. He found that an incomplete recording of the permit occurred which did not satisfy the statutory requirements and ruled that the permit was therefore void. Thus, he stated that "there is no matter before the court for hearing" and he dismissed the Plaintiff's appeal as to this issue, also.

The Defendant Brown Brothers, Inc. appealed both of these rulings.

■ Although the Justice's two decrees state that Plaintiff's 80B complaints are being *dismissed,* it is clear that he was actually sustaining Plaintiff's contentions that the license which Brown Brothers, Inc. received did not validly authorize, under either statute, the action Brown Brothers, Inc. proposed to take. They were in fact final determinations of issues unfavorable to the Defendant Brown Brothers, Inc. The Defendant Brown Brothers, Inc. —not the Plaintiff—is the aggrieved party.[3]

We are mindful of the generally accepted statement that appeals are not allowable from findings of fact or conclusions of law but only from judgments.[4]  *E. g.,* Burt Co. v. Burrowes Corp., 158 Me. 237, 182 A.2d 481 (1962); Gosney v. State, 10 Cal.App. 3d 921, 89 Cal.Rptr. 390 (Cal.Ct.App.1970); Calore Rigging Corp. v. Sterling Engin. & Const. Co., 105 R.I. 150, 250 A.2d 365 (1969); Hamblen v. Goff, 90 Idaho 180,

409 P.2d 429 (1965); Inter-Island Resorts, Ltd. v. Akahane, 44 Haw. 93, 352 P.2d 856 (1960); *cf.* United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227, 78 S. Ct. 674, 2 L.Ed.2d 721 (1958). However, in these cited cases the basic inquiry concerned the *form* or very *existence* of a judgment—we, on the other hand, are here concerned with the necessity of determining the *purpose* and *import* of the Justice's actions. We look to the reasoning found in the Justice's decrees solely to explain the otherwise confusing dismissals of the winning party's complaints.[5]

Analogous and persuasive authority for our present approach flows from the pen of then Chief Judge Benjamin Cardozo:

> "Doubt, if there is any, as to the scope of the adjudication is dispelled when the order is interpreted in the revealing light of the opinion. We do not look to an opinion to override an order, yet we look to it as a guide to construction when the meaning is uncertain." People ex rel. McCanliss v. McCanliss, 255 N.Y. 456, 462, 175 N.E. 129, 131 (1931).

*Cf.* Seaboard Air Line Ry. v. Branham, 104 So.2d 356 (Fla.1958).

Our own M.R.C.P., Rule 1 pledges us "to secure the just, speedy and inexpensive determination of every action", and in the spirit of this promise we must look behind the form of the Justice's dismissal of Plaintiff's complaints and determine the purpose and import of the Justice's orders. We are satisfied that the Justice's decrees are final determinations that in order to proceed with its proposed construction Brown Brothers, Inc. must have a valid permit under both the Wharves and Weirs

---

3. Indirect support for using the Justice's conclusions or findings is found in Field, Mc-Kusick and Wroth, Maine Civil Practice, supra, at § 52.1, where it is asserted that "[f]indings of fact and conclusions of law also serve to make definite what is decided in the case. . . . "

4. This discussion is not concerned with the situation which exists when a party appeals

from a truly favorable but not entirely satisfactory judgment. *See* Perkins v. Kavanaugh, 135 Me. 344, 196 A. 645 (1938).

5. M.R.C.P., Rule 54(a): " 'Judgment' as used in these rules includes a decree and any order from which an appeal lies."

and the Wetlands statutes and that it, in fact, had not received a valid permit under either. The Defendant Brown Brothers, Inc. is aggrieved by these final judgments and is entitled to appeal, as it has done as to the Justice's decision concerning its license under the Wetlands Act.

■ However, the Legislature did not see fit to give the Law Court jurisdiction to hear appeals from decisions of the Superior Court concerning licenses under the Wharves and Weirs Statute.[6] In In re Hadlock, 142 Me. 116, 48 A.2d 628 (1946) we held that the provision of the Wharves and Weirs Statute stating that the decision of the Justice shall be "binding" indicated the Legislature's purpose that the issue should be finally determined in the Superior Court. We re-examined *Hadlock* in connection with an appeal from an administrative decision by the Secretary of State in Papapetrou v. Edgar, Me., 290 A.2d 202 (1972). We concluded that the general language of later statutory revisions had not extended the Law Court's jurisdiction to include situations where the legislative language revealed an intention that appellate review should end in the Superior Court.

No such language indicating a legislative intention of Superior Court finality appears in the Wetlands Act. However, the circumstances in which this case has been presented to us and the importance of the issue justify our including in our construction of the Wetlands Act the question of whether it has repealed by implication the Wharves and Weirs Statute.

We return now to the first issue raised in the parties' briefs, that of repeal by implication. Does the Wetlands Act impliedly repeal the Wharves and Weirs Statute, thus requiring the Defendant to obtain only one permit to extend his wharf?

Both parties realize that repeal by implication is not favored by Maine courts. The case of State v. London, 156 Me. 123, 162 A.2d 150 (1960) gives exhaustive treatment to this Court's position on the rules of construction applicable to cases of alleged repeal by implication. The *London* case notes that both statutes will be given effect if possible. *London* states the basic test that "repeals by implication exist when a later statute covers the whole subject matter of an earlier statute, or when a later statute is repugnant to or inconsistent with an earlier statute." 156 Me. at 127, 162 A.2d at 152. Also quoting from Starbird v. Brown, 84 Me. 238, 240, 24 A. 824 (1892), the Court notes that

"[t]he test is whether a subsequent legislative act is so directly and positively repugnant to the former act, that the two cannot consistently stand together. Is the repugnancy so great that the legislative intent to amend or repeal be evident? Can the new law and the old law be each efficacious in its own sphere?"

The Court also acknowledges that a partial repeal by implication is possible when only certain provisions of two statutes are in irreconcilable conflict. *See* State v. Bryce, Me., 243 A.2d 726 (1968).

■ Consequently, it is this Court's duty to examine the two statutes in question, including their legislative history and intent, in determining whether both can stand, either entirely or partially. Once judicially determined, this legislative intent must control. Lyon v. Lyon, 88 Me. 395, 34 A. 180 (1896). The test is to determine if the two statutes are so repugnant that they cannot stand together, evidencing a legislative intent that one should repeal the other, or are covering completely the same subject matter.

6. Two cases later cited construing the statute did not arise on direct appeal. Whitmore v. Brown, infra, arose under a bill in equity alleging that an unlicensed wharf was a nuisance and seeking a permanent injunction preventing encroachment of the wharf on the plaintiff's premises. Sawyer v. Beal, infra, was an action to recover a penalty, provided by statute, recoverable by the owner of a shore from a person constructing a fish weir or wharf in front of the shore without statutory authority.

The Wharves and Weirs Statute dates from Chapter 78 of the Public Laws of 1876, although its roots descend from the old Colonial Ordinance of 1641–1647 which has consistently been applied by Maine courts. Andrews v. King, 124 Me. 361, 363, 129 A. 298, 299 (1925). That ordinance allows landowners whose property adjoins tidal flats to own the flats to the low water mark subject to certain public rights.[7] One of such rights is that of navigation. Thus, even prior to the statute's passage in 1876, a landowner could build a wharf so long as it did not interrupt or impede navigation of the tidewaters.

The statute intervened and stated that the municipal officers of a town in which the wharf is to be located were to decide, after hearing, whether the wharf would be "an obstruction to navigation, or an injury to the rights of others." If the officers found no such obstruction or injury, they were to issue a license to the applicant. The application, petition and notice were all to be filed in the town. As discussed in Whitmore v. Brown, 102 Me. 47, 56, 65 A. 516, 520 (1906), the statute's intent is to remove the right to build (or later, extend) a wharf from the self-help domain and subject that right to licensing procedures controlled by the municipality. Thus, the municipal officers must decide whether the wharf will invade certain public rights, including navigation, and thereby become public nuisances. The current statute, 38 M.R.S.A. § 1022, retains these basic provisions and includes later adopted language which details the procedures for appeal to the Superior Court.

The Wetlands Act was adopted into law as Chapter 348, Public Laws of 1967. It basically requires a license approved by a municipality and the Wetlands Control Board if one seeks to alter or drain or deposit sanitary sewage on a coastal wetland. Coastal wetland is defined as "any swamp, marsh, bog, beach, flat or other contiguous lowland above extreme low water which is subject to tidal action or normal storm flowage at any time excepting periods of maximum storm activity." 12 M.R.S.A. § 4701. The Act prescribes procedures for applying for a permit, for holding a public hearing, for issuing a permit and for recording a permit. Other sections designate appeal procedures, allow for limited exemptions and exceptions and specify penalties and remedies for violations.

Our Court in State v. Johnson, Me., 265 A.2d 711 (1970) viewed this Act as a state-wide conservation program:

"As distinguished from conventional zoning for town protection, the area of Wetlands representing a 'valuable national resource of the State,' of which appellants' holdings are but a minute part, is of state-wide concern. The benefits from its preservation extend beyond town limits and are state-wide." 265 A.2d at 716.

We consider that the purposes of the two Acts are different and distinct. The Wetlands Act is a long term, comprehensive plan aimed at the protection of the public interest from the impact of the alteration of the coastal wetlands. It is concerned with proper land use to the end that the public safety, health and welfare will not be threatened and that public and private water supplies, wildlife and fisheries will not be endangered. While its ecological effect may be far more extensive, its

---

7. Although the extent of the public rights under the ordinance to tidal flats is not entirely clear there are certain rights which apparently were includable in addition to navigation. "Others [the public] may sail over them, may moor their craft upon them, may allow their vessels to rest upon the soil when bare, may land and walk upon them, may ride or skate over them when covered with water-bearing ice, may fish in the water over them, may dig shell fish in them, may take sea manure from them . . . ." Marshall v. Walker, 93 Me. 532, 536–537, 45 A. 497, 498 (1900). Originally, the feeling was that the tide flats owner could exclude the public by enclosing and building a wharf on the land, but this reading of the ordinance was abandoned by Chief Justice Shaw of Massachusetts in Commonwealth v. Alger, 61 Mass. (7 Cush.) 53, 79 (1851).

direct application is limited to swamps, marshes, bogs, beaches, flats or other contiguous lowlands above extreme low water. While the owner's title to his land extends to low water mark, the Wharves and Weirs Act, like the common law, imposes restrictions upon his use of this area between high and low water mark. Whitmore v. Brown, supra. Under this Statute, the owner may also be permitted to extend his wharf or weir out beyond low water mark, thus receiving a privileged use of the public domain but similarly restricted to avoid interference with the rights of other members of the public as to navigation and fishing. Sawyer v. Beal, 97 Me. 356, 54 A. 848 (1903).

The territorial areas upon which these two Acts directly operate are not identical. The Wharves and Weirs Statute controls activities from high water mark outward while the Wetlands Act applies to uses of the land from the low water mark inland. Both Acts, however do operate upon the strip of land which lies between high and low water mark.

The fact that the extending of a wharf may call into play two statutes does not mean that the statutes cannot stand together. Any inconsistency requiring repeal by implication, in whole or in part, has not been demonstrated by the Defendant. Considerations of navigation or fishing are not necessarily relevant to determinations under the Wetlands Act. Nuisance may be an entirely foreign topic to actions under the Wetlands Act as well. Similarly, discussions of land-use planning, ecology and conservation may never occur when action is taken under the Wharves and Weirs Statute. Although overlap in subject matter or procedure is possible, it is not certain to occur in many or most cases. As environmental legislation grows, the chances are that more actions of property owners will come under the scrutiny of more than one statute. Solely because a later, general statute may on occasion cover the same action proposed by a landowner as does an earlier one is not sufficient

proof of repeal of the latter by the former. Without a clearer showing that the later Act encompasses the earlier one's field or is inconsistent with and repugnant to the earlier enactment, the repeal by implication argument cannot succeed. We are satisfied that the enactment of the Wetlands Act did not effect a repeal of the Wharves and Weirs Statute.

The Defendant's second contention is that his permit which he filed in the Registry as required under section 4702 of the Wetlands Act, is a valid permit under that Act. The Plaintiff alleges that the filed document is ineffective because it lacks pertinent information essential to a valid permit.

Section 4702 does not explicitly mandate what constitutes a properly filed permit. It states only that "[e]very permit . . . shall be recorded by the owner in the registry of deeds for the county in which the wetlands lies." Moreover, permits not recorded within 30 days will be deemed void.

The Defendant filed the entire permit as issued by the town to him. The permit is a form permit which contains spaces which are to be filled in with relevant information. About one third of the way down the form is a large space following the phrase "bounded and described as follows". Undeniably, this space is to be used for a description of the land which will be altered under the authority of the permit. In this space there is written only "as per attached sketch". No such sketch was recorded, however, and thus the filed document consists only of the form permit describing the property involved "as per attached sketch".

The purpose of filing as required by the statute is to give public notice of the action taken by the municipality and Wetlands Control Board concerning a certain proposal of an applicant to alter wetlands. To effectuate this purpose, a permit must contain essential information calculated to inform one who goes to the

Registry of what has been allowed by the issuing authorities. One given the authority to alter wetlands is empowered to alter only that area of wetlands which is allowed by the permit, subject to any conditions affixed by the municipality or Wetlands Control Board. Therefore, in order to give effective notice, the filed permit must include an adequate description of the area to be altered.

It is not necessary that the description be written in the space on the permit; it may be attached and filed with the permit if reference to this attachment is clearly made on the permit. The Defendant's attempted use of this method of description is not improper; however, no such attached sketch has ever been filed.

The Defendant asserts that the filed permit refers to the application, which the statute requires to contain descriptive information, and that this is sufficient public notice to lead an interested searcher from the Registry of Deeds back to the municipal office where the application presumably was originally filed. We do not agree. An interested party is not expected to assume that the application which was earlier filed with the municipal officers necessarily contains the essential description—in fact, it may not contain it as the area approved by the local and state officials may be less extensive than that originally described in the application. The statute does not require a permanent recording of the application by the municipal officers, as desirable as such a recording no doubt is. There is no assurance that the application will remain available for examination by interested persons.

We are mindful that we have held that the requirements of public notice in tax

lien certificates may be satisfied by specific reference to documents in a depository of public records other than the Registry of Deeds. In Davis v. City of Ellsworth, Me., 281 A.2d 138, 139 (1971) we said, with approval:

"[T]he title examiner was clearly directed to a particular lot on a particular map on file in the Assessors' Office. The precise location of that office, a depository of public records, was disclosed."

■ The oblique reference here to the original application falls far short of giving the "identification with reasonable certainty" which we found to be necessary in descriptions of tax deeds in Oceanic Hotel Co. v. Angell, 143 Me. 160, 57 A.2d 143 (1948), and which we believe must have been intended by this statute. This permit makes no reference to any certain plan or description which is recorded or filed in any designated place. In fact, it purports to make reference for description to only one source—the sketch which was not attached or recorded as it was intended that it should be.[8]

Because the permit at the Registry contains no description of the property to be altered, the Defendant's permit is defective and invalid.

The entry will be: Defendant's appeal from decision under Wharves and Weirs Statute is dismissed.

Defendant's appeal from decision under Wetlands Act is denied.

All Justices concurring.

WEBBER, J., sat at oral argument but retired before the adoption of this opinion.

---

8. We notice also that the approval of Defendant Brown Brothers, Inc.'s application by the Wetlands Control Board was (pursuant to the authority given by 12 M.R.S.A. § 4702) subject to certain conditions which may well have altered the effect of the original application. The permit failed to disclose the nature and impact of these conditions. While the absence of these conditions from the recorded permit apparently played no part in the Justice's decision that a valid recording had not occurred, we consider that if conditions upon the applicant's altering of the wetlands have been imposed—as this permit states they were—the permit and its recording are incomplete unless the conditions are also included.