**Richard R. SEVIGNY**

v.

**HOME BUILDERS ASSOCIATION OF MAINE, INC. et al.**

Supreme Judicial Court of Maine.

Argued March 2, 1981.

Decided April 27, 1981.

Locke, Campbell & Chapman, Frank G. Chapman, orally, Augusta, Roger D. Nadeau, Biddeford, for plaintiff.

J. Armand Gendron, orally, Sanford, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN,* and CARTER, JJ.

McKUSICK, Chief Justice.

In this action plaintiff, the former Executive Director of defendant Home Builders Association of Maine, Inc. (Home Builders), seeks damages for alleged breach of a written employment contract between the parties. The Superior Court (Kennebec County) entered judgment for defendant Home Builders after reviewing the factfindings and recommendation of a referee, who had heard the case by agreement of the parties. The referee's recommendation of judgment in favor of defendant was based on his factual finding that the parties had agreed to terminate the written contract of employment between them. Notwithstanding its apparent success below, defendant Home Builders appeals to the Law Court,[1] asserting that the referee's factual finding, if left undisturbed, could operate preclusively against it in potential future litigation to enforce the alleged termination agreement and further that the undisputed facts demonstrate as a matter of law the absence of any agreement between the parties to terminate the original employment contract. We agree on both counts, and therefore must vacate the judgment and remand the case to the Superior Court for further proceedings.

In late 1975, plaintiff and Home Builders entered into a written contract of employment[2] whereby plaintiff was to serve as Home Builders' executive director. Plaintiff's duties as executive director were to service Home Builders' membership, to recruit new members, and to perform certain administrative functions. As compensation, rather than receiving a fixed salary, plaintiff was to receive a portion of the dues paid by old and new members, as well as half the net proceeds from certain special events put on by Home Builders for the purpose of increasing general fund revenue.

Plaintiff soon found that his administrative duties hampered the recruiting efforts on which his income was to be largely based. Accordingly, he submitted to the Board at its June 1, 1976, meeting a proposal calling for him to receive a guaranteed salary of $25,000 annually. Expressing con-

---

* Glassman, J., sat at oral argument and in the initial conference, but did not participate further in this decision.

1. A wholly owned subsidiary of Home Builders also appeals from the judgment entered jointly in favor of it and Home Builders. During the term of the written contract between Sevigny and Home Builders, the former was also to work, pursuant to an oral agreement, for the subsidiary. The referee and the Superior Court treated plaintiff's employment agreement with the subsidiary as an inseparable adjunct of his contract with Home Builders, and the parties have taken no contrary position on appeal. Therefore, for convenience we discuss only Home Builders' appeal, intending that our holdings apply equally to the subsidiary's appeal.

2. The contract, which was retroactive to July 1, 1975, was for a period of three years, subject to a right of termination exercisable by Home Builders' Board of Directors on any anniversary date.

cern over Home Builders' tight budgetary situation, the Board that month tabled plaintiff's proposal; at its next meeting, however, the Board adopted a separate proposal by plaintiff calling for amendment of the original contract to entitle him to receive, in addition to the other elements of his compensation, 50% of the proceeds from the "home shows" put on from time to time by Home Builders and 50% of an escrow fund containing the proceeds for membership renewals.

As 1976 progressed, however, the financial condition of Home Builders worsened, and plaintiff's time was even more occupied with non-income-producing administrative duties. In early November, plaintiff sent to each Board member a memorandum, headed "Issues before November 10 Meeting," in which he again stressed his frustration with his job. At that November 10 meeting, the Board responded to plaintiff's concerns by establishing a committee to examine Home Builders' overall operations. The committee recommended that the full Board establish an executive committee for the purpose of reorganizing Home Builders, and the Board accepted that recommendation at its January 13, 1977, meeting. As part of the executive committee's activities, the president of Home Builders, Maurice Gendreau, subsequently asked plaintiff to suggest ways by which Home Builders could economize in its operation.

Plaintiff responded to Gendreau's request by sending him a letter dated February 2, 1977. Notwithstanding the broad scope of that request, plaintiff almost entirely limited his response to a discussion of his concern with his own position, stating, in pertinent part, that:

B. It was agreed by the terms of my contract that any changes in any terms of my contract must be agreed to by both parties.

C. If it is the Board's intent to subtly remove me as its E.O., may I suggest that it remunerate the following:

1. One half of the proceeds of the reserve account for membership renewal.

2. One half of the proceeds of the Scarborough Home Show.

3. All of the reimbursements due.

D. If the Board wishes to retain my services on a fulltime (40 hour per week basis) salaried position, I ask for a remuneration level of $20,000 annually with other general requirements to be negotiated. Suggested requirement under proposal C would also have to be met.

E. If the Board wished to retain my services on a parttime basis, may I request the sum of $15.00 per hour with a minimum of twenty hours per week for a minimum term of six months. Suggested requirements under proposal C would also have to be met.

F. If the Board wishes to maintain my status on a fulltime basis, and allow the establishment of the office at my home, we may then renegotiate new contractual arrangements.

After receiving plaintiff's letter, President Gendreau called an executive committee meeting for February 5, 1977, at which the committee decided that Home Builders could not afford plaintiff's salary demands and voted to seek legal advice in the matter.

The committee brought plaintiff's letter before the full Board for discussion at its February 10, 1977, meeting; and the Board then voted as follows:

Because of the limited financial condition of the Home Builders Association of Maine; and, because the Home Builders Association of Maine cannot afford to meet the requests of compensation from Richard Sevigny as he proposed; it was moved, seconded, and voted by the majority of the Board of Directors to terminate with regrets, the services of Richard Sevigny as of this date, with a $200.00 (two hundred dollar) appreciation bonus.

It was further moved, seconded, and voted by the majority of the Board that final settlement of all monies due shall be agreed upon between Richard Sevigny and the Executive Committee as soon as possible; but in no event later than February 28, 1977.

It was further moved, seconded, and voted by unanimous vote of the Board that an award of appreciation be presented for services rendered with the hope that Dick would be available to the Association on a consulting basis.

Pursuant to these votes, the executive committee on February 23, 1977, voted to pay plaintiff the following amounts:

| | |
|---|---:|
| ½ of the existing N.O.W. account balance | $2,022.96 |
| All expenses filed to date (2/23/77): | |
| 1976 | 1,041.99 |
| 1977 | 162.11 |
| ½ of profit from refreshment fund | 75.93 |
| Total | $3,303.04 |

Although plaintiff met later with President Gendreau, he never agreed to the payments voted by the executive committee.

After a year had passed without an agreement being reached, plaintiff commenced this action. The parties agreed to submit the case to a referee, M.R.Civ.P. 53(b)(1), who found that the Board reasonably believed that plaintiff's February 2, 1977, letter contained alternative proposals for either termination or continuation of employment, that the Board accepted a proposal that plaintiff be relieved of his duties with payment of the moneys due him, that the parties had thus agreed to terminate the employment contract, and that the amounts determined by Home Builders to be due plaintiff as of the date of termination had been tendered but not accepted because of the advent of litigation. Although explicitly noting that the moneys due plaintiff would be recoverable in an action for damages for breach of the termination agreement, the referee concluded there had been no breach of the original contract by either party and accordingly recommended judgment for defendant. *Plaintiff Sevigny* then moved in the Superior Court for acceptance of the referee's report. Defendant Home Builders objected, notwithstanding the fact that the judgment

recommended by the referee was, on its face at least, in Home Builders' favor. It contended that there was no evidence to support the referee's findings of fact and that the evidence on the record did not support a conclusion that the parties had entered into a termination agreement. The Superior Court accepted the report over defendant's objection. Defendant now appeals, raising the same points on which it based its Superior Court objection to the report.

■ At the outset, we must decide whether, because of adverse collateral consequences of adjudications underlying the Superior Court judgment, defendant is "aggrieved" by that judgment in its favor, within the meaning of the provision of 14 M.R.S.A. § 1851 (1980) reading:

> In any civil case any party aggrieved by any judgment, ruling or order may appeal therefrom to the law court within 30 days or such further time as may be granted by the court pursuant to a rule of court.

To satisfy this aggrievance requirement for standing to appeal, a party must show that the judgment he seeks to subject to appellate review "operate[s] prejudicially and directly upon [his] property, pecuniary or personal rights." *Jamison v. Shepard*, Me., 270 A.2d 861, 862–63 (1970).

■ In the appeal now before us we cannot avoid resolving that threshold question by accepting appellee Sevigny's waiver of any objection to defendant's appellate standing. Such standing cannot be conferred by agreement of the opposing party, any more than jurisdiction may be conferred upon a court by agreement, *Tibbetts v. Pelotte*, Me., 427 A.2d 956, 958 (1981). Although we read statutory aggrievance requirements such as that imposed by section 1851[3] as implicating only standing of a

---

**3.** The aggrievance requirement is common, though not universal, in statutes providing for judicial review. *See, e.g.,* express statutory requirements in the following: 4 M.R.S.A. § 401 (1979) (former statute governing appeals from Probate Court to Supreme Court of Probate); 5 M.R.S.A. § 11001(1) (Supp.1980) (appeals to the Superior Court under the Adminis-

trative Procedure Act). *Cf.* 39 M.R.S.A. § 103 (Supp.1980) (any "party in interest" may appeal from a Workers' Compensation Commission order). Even where the pertinent appeals statute does not specify an aggrievance requirement for standing to appeal, this court has found one implicit in the appellate process. *See* 14 M.R.S.A. § 1901 (1980) (appeals from

party to appeal, and not the jurisdiction of the Law Court,[4] many of the same public interests require that, regardless of the complaisance of the appellee, the court satisfy itself both that it has jurisdiction and also that the appellant has the requisite standing. For public policy reasons deeply imbedded in the history and nature of courts, *see Flast v. Cohen*, 392 U.S. 83, 95–97, 88 S.Ct. 1942, 1949–1951, 20 L.Ed.2d 947 (1968), the Law Court decides only questions of live controversy, and not hypothetical, abstract, or moot questions. *Lund ex rel. Wilbur v. Pratt*, Me., 308 A.2d 554, 559 (1973); *Hazzard v. Westview Golf Club, Inc.*, Me., 217 A.2d 217, 224 (1966). The demands upon this court are too heavy for it to commit any of its limited resources of time and effort to reviewing the legal correctness of action below at the behest of a person to whom our decision in no alternative will make any real difference. We must here satisfy ourselves independently that defendant-appellant is in fact aggrieved as a result of the judgment entered below nominally in its favor. We conclude that it is so aggrieved.

■ Ordinarily a party is not aggrieved by a judgment granting the relief requested in his pleadings. *Administrator, Motor Vehicle Administration v. Vogt*, 267 Md. 660, 663–64, 299 A.2d 1, 3 (1973); *cf. Blaney v. Rittall*, Me., 312 A.2d 522, 524–25 (1973). However, a party may take an appeal from a judgment in his favor that is a victory in name only. *Northup v. Northup*, Me., 366 A.2d 529 (1976); *Blaney v. Rittall, supra.* Thus, in *Northup, supra*, the defendant-husband was allowed to appeal the dismissal of the wife's divorce complaint because that dismissal, although ostensibly favorable to the defendant, was based upon a determina-

tion adverse to him, namely, that the marriage had already been terminated by force of law when the defendant-husband was sentenced to life imprisonment on a murder conviction. Similarly, in *Blaney, supra*, the defendant Brown Brothers, Inc., which proposed to extend its wharf on tidal waters, was permitted to appeal the Superior Court's dismissal of a neighbor's Rule 80B complaint seeking review of a municipal permit that purported to authorize that extension. Even though the dismissal below was facially favorable to the defendant, it was based on determinations that the defendant had not obtained any permit as required by the Wharves and Weirs Statute and that the permit issued it did not comply with the Wetlands Act.

■ Just as in *Northup* and *Blaney*, defendant Home Builders here argues that the Superior Court judgment facially in its favor amounted to a Pyrrhic victory. Specifically, it asserts that the referee's factual finding that the parties had entered into an agreement to abrogate the employment contract between them and to terminate their business dealings could, if left intact, operate preclusively against it in subsequent litigation. It is defendant's position that, because it might hereafter be foreclosed from litigating the existence of a termination agreement, the Superior Court's determination makes it an "aggrieved" party under 14 M.R.S.A. § 1851. We agree.

■ It is familiar law in Maine that [w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action

District Court to Superior Court); *Northup v. Northup*, Me., 366 A.2d 529 (1976). *See also In re Bangor & Aroostook R. Co.*, 159 Me. 86, 92, 188 A.2d 485, 489 (1963) (appeal from Public Utilities Commission under predecessor of 35 M.R.S.A. § 303). *See generally* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 72.2a (Supp.1977).

4. We recognize that at times in applying aggrievance requirements "jurisdiction" and "standing" have been used interchangeably and

that at other times "jurisdiction" has been used exclusively. *See In re Leonard*, Me., 321 A.2d 486, 488 (1974) ("jurisdiction"), *citing O'Grady v. Partridge*, Me., 319 A.2d 115, 117–18 (1974) ("standing"). *See also In re Thompson*, 116 Me. 473, 477, 102 A. 303, 305 (1917) ("jurisdiction"). Although analysis in terms of standing will seldom lead to a different result, we believe it better focuses on the appropriate considerations.

between the parties, whether on the same or a different claim.

*Restatement (Second) of Judgments* § 68 (Tent. Draft No. 4, 1977); *Hossler v. Barry,* Me., 403 A.2d 762, 767 (1979). In the case at bar the Superior Court's finding [5] that the parties had resolved their differences by entering into a termination agreement was essential to the decision on the ground that neither party had violated the original contract of employment. Under the doctrine of collateral estoppel, that necessary factual finding would in any subsequent litigation be binding at least as to the issue of the existence of a termination agreement, even though the referee did not go to the extent of spelling out the terms of that agreement. *See Hossler v. Barry, supra* at 767. Accordingly, defendant is an aggrieved party, which has standing to appeal from the Superior Court judgment, even though apparently in its favor, because an essential finding on which that judgment is based might otherwise prejudice it through the use of collateral estoppel in the future proceeding. *See Lincoln v. Austic,* 60 App.Div.2d 487, 489–90, 401 N.Y.S.2d 1020, 1021 (3d Dept. 1978).

Having concluded that defendant was aggrieved by the Superior Court judgment so that it may prosecute the present appeal, we now turn our attention to the merits. Defendant contends that there was no credible evidence to support the referee's finding of fact that the parties had mutually agreed to terminate their business relationship as of February 10, 1977. *See Wendward Corp. v. Group Design, Inc.,* Me., 428 A.2d 57, 62 (1981).

It is hornbook law that in order for any legally binding agreement to come into existence, the parties to it must have manifested their mutual assent to all of its material terms. The record herein reveals only three possible operative events bearing on the creation of an employment termination agreement between the parties: the February 2, 1977, letter from plaintiff to Home

Builders' President Gendreau; the February 10, 1977, vote by Home Builders' Board of Directors purporting to dismiss plaintiff; and the February 23, 1977, vote by Home Builders' executive committee.

If the February 2, 1977, letter from plaintiff to President Gendreau, as quoted above, was an offer of terms for termination, it was never accepted by defendant Home Builders in every material detail. Paragraph C of Sevigny's letter requested that defendant give him as consideration for the termination of his employment contract half the funds contained in the reserve account for membership renewal, half the proceeds of the Scarborough Home Show, and "[a]ll of the reimbursements due." On February 10, 1977, the Board in executive session voted to terminate plaintiff's employment with payment only of all "monies due" him plus a $200 "appreciation bonus." Although the referee could have found that half the reserve membership account funds and the reimbursements requested by plaintiff were "monies due" as of February 10, there is no evidence to show the amount to be produced by the Scarborough Home Show—which was to be held in March 1977 —was in any sense "due" plaintiff either at the time of the Board's February 10 vote or by February 23, when the executive committee voted on what to pay to plaintiff. Nor was there any evidence equating the prospective Scarborough Home Show proceeds to the $200 appreciation bonus voted on by the Board on February 10. In short, plaintiff's February 2, 1977, request for payment by the Board of a percentage of the money to be produced by the home show the following month was never acceded to by the Board.

If on the other hand the Board's February 10 vote was a counteroffer by Home Builders to plaintiff to terminate the employment contract on payment to plaintiff of the "monies due" plus a $200 bonus, plaintiff never accepted that offer. After the Board voted to dismiss him, plaintiff

---

5. When the Superior Court accepted the referee's report and entered judgment on his recommendation, the referee's findings of fact became the findings of the Superior Court. *See* M.R.Civ.P. 52(a).

asked what the termination compensation would be and President Gendreau responded that the parties would work it out. The executive committee indeed came up with a proposal in its February 23 vote, but plaintiff rejected it. There is no basis in the record on which the referee could find the existence of a termination agreement. Thus, his finding was clearly erroneous. M.R.Civ.P. 53(e)(2). The Superior Court should have rejected the referee's report.

The entry must be:

Appeal sustained.

Judgment of the Superior Court vacated.

Case remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.