BANGOR AND AROOSTOOK RAILROAD COMPANY, RE: APPLICATION TO OPERATE AS A COMMON CARRIER OF FREIGHT AND MERCHANDISE BY MOTOR VEHICLE. BANGOR AND AROOSTOOK RAILROAD COMPANY, RE: PETITION TO AMEND ITEM "H" OF COMMON CARRIER CERTIFICATE NO. 137.

Kennebec.    Opinion, April 27, 1961.

*Scott W. Scully,*
*Joseph Campbell,* for plaintiff.

*Frank Libby,*
*John G. Feehan,* for Commission.

*Raymond Jensen,*
*Roland Rice,* for Trucking Co.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J.  On exceptions.  These cases are to be considered together.  Cole's Express, Bemis Express, Inc.,

Houlton Truck Express, Fox & Ginn, Inc. and Maine Motor Rate Bureau are intervenors. They will be designated hereafter as the protestants. Two applications were filed by the Bangor and Aroostook Railroad Company seeking authority to operate as a common carrier by motor vehicle. We first consider the application requesting authority to operate as a common carrier of freight and merchandise for hire by motor vehicle between Northern Maine Junction, in the Town of Hermon, and points and places located on the lines of the Bangor and Aroostook Railroad Company in Aroostook County and the Towns of Patten and Sherman Station also located on the lines of the railroad company. The point of departure is Northern Maine Junction, in the Town of Hermon. The application requests permission to operate only on Mondays of each week. The second application is to amend Common Carrier Certificate #137, which authorizes a motor vehicle movement between Oakfield and Fort Kent, by adding authority to carry freight and merchandise in such movement so that said amended certificate shall read:

"Between Oakfield and Fort Kent via highway routes #11, #212 and unnumbered route Oakfield to Smyrna Mills, passing through and serving intermediate points, transporting mail for the United States Government; express shipments for itself, or for or in connection with, Railway Express Agency, Inc.; and freight and merchandise, with the provision that no express shipments or freight and merchandise shipments shall be transported unless the same have had or are to have a prior or subsequent movement by the Bangor and Aroostook Railroad Company, and that said traffic shall move on a rail bill of lading."

After hearing on both applications the Commission decreed:

"1. That Certificate No. 171, Docket X-3745, now issued to the Bangor and Aroostook Railroad Company be amended to include the transportation of, —

Meats between Northern Maine Junction in the Town of Hermon, on the one hand, and points and places located on the lines of the Bangor and Aroostook Railroad Company in Aroostook County and the Towns of Patten and Sherman Station, on the other hand, departing Northern Maine Junction on Mondays only;

"2. That Certificate No. 137, Docket X-1729, now issued to the Bangor and Aroostook Railroad Company be amended by substituting the following for item 'H' as now appearing therein, —

Between Oakfield and Fort Kent via highway routes #11, #212 and unnumbered route Oakfield to Smyrna Mills, passing through and serving intermediate points, transporting mail for the United States Government; express shipments for itself, or for or in connection with, Railway Express Agency, Inc., and meats, with the provision that no express shipments or meat shipments shall be transported unless the same have had or are to have a prior or subsequent movement by Bangor and Aroostook Railroad Company, and that said traffic shall move on a rail bill of lading;"

The decree was signed by two members of the Commission, while a third dissented in part. The protestants filed exceptions, being seven in number.

*Exception 1* objects to the judgment and decree as unwarranted in law because it is not supported by any substantial evidence and is predicated on erroneous applications of law.

*Exception 2* urges that the application of the petitioner, Bangor and Aroostook Railroad Company, in Docket X-3745 was found to be governed by the provisions of Sec. 25 of Chap. 48 of the R. S. of Maine, rather than by Sec. 20 of said chapter.

*Exception 3* attacks the decree on the basis that the Commission determined that the application of the petitioner

in Docket X-1729 was governed by the provisions of Sec. 25 of Chap. 48, rather than by Sec. 20 of said chapter.

*Exception 4* treats of the objection to the decree of the Public Utilities Commission determining that convenience and necessity require the amendment of Certificate #137 when there is no substantial evidence to justify this finding.

Objection by *Exception 5* refers to a finding,

> "As before stated, the refrigerated service on meat shipments and the pickup and delivery of such shipments was instituted on June 15, 1958 and has since continued. The applicant now desires to continue such transportation by motor vehicle on Monday nights *in lieu of* the refrigerated car movement by rail." (Emphasis supplied.)

Complaint is that there is no substantial evidence to support the finding,

> "The applicant now desires to continue such transportation by motor vehicle on Monday nights *in lieu of* the refrigerated car movement by rail." (Emphasis supplied.)

*Exception 6* says there is no substantial evidence to justify the finding,

> "We are of the opinion that this change in mode of transportation will not alter the competitive situation nor impair the operations of existing motor carriers."

*Exception 7* is quoted in its entirety:

> "Whether the application of Bangor and Aroostook Railroad Company is governed by the provisions of Section 25 of Chapter 48 of the Revised Statutes of Maine, 1954, or by Section 20 of said Chapter, intervenors allege that the applicant has failed to sustain the burden of proof and that there is no substantial evidence to justify the findings of the majority of the Public Utilities Commission

and the ruling, judgment and decree of the majority of said Commission based thereon is, therefore, erroneous, and that the rights of said intervenors have been substantially prejudiced thereby."

Portions of Secs. 20 and 25 of Chap. 48, R. S., 1954 are concerned in the issues of this case. There is marked disagreement between the petitioner and the protestants. The petitioner takes the position that it is requesting the right to perform substituted truck for rail service under provisions of Sec. 25, while the protestants say that the requirements of Sec. 20 are applicable and that Sec. 25 is not here concerned. The Bangor and Aroostook Railroad has operated for many years from Northern Maine Junction to many towns in Aroostook County, also to Patten and Sherman Station in Penobscot County. The railroad has performed a pickup and delivery service in conjunction with the Maine Central Railroad Company and has solicited freight and merchandise in Bangor. It appears from the testimony that on Mondays meat shipments have not always been ready in time to make the scheduled departure of train #57 at ten o'clock in the evening and that on such Mondays as the meat shipment is not ready to leave at the scheduled time of ten o'clock the railroad desires authority to haul it over the highways by motor vehicle. It is necessary for the railroad to have available the meat shipment by six or six-thirty, for four hours are required to properly handle the shipment and place it in the refrigerated car ready for shipment. The railroad claims it has thirty-five regular customers in Northern Maine who avail themselves of this control temperature service. It is important to these customers that they receive their shipment of meat early Tuesday morning in order to have it available for delivery to customers early on Tuesday, and failure of prompt delivery causes inconvenience to the customer and, in one instance, the railroad lost its largest customer because of inability to

serve the customer. Testimony of the petitioner has it that departure of train #57 from Northern Maine Junction is late "practically every Monday." The sum and substance of petitioner's evidence is that if train #57 is late in departure, caused by the meat shipment, there is inconvenience to the consignees of the meat and also to the railroad. With this type of supplies, time is of the essence, according to the contention of the petitioner. If scheduled departure of freight trains is delayed, inconvenience results, not only to the customer, but also the delay affects the operation of the train to the extent that it fails to connect with other trains, thereby causing many receivers of carload freight inbound to Aroostook County to suffer inconvenience. The applicable portion of Sec. 25 provides:

"Applications may be filed with the commission by railroads, electric railways, railway express or water common carriers asking its approval of operation by motor vehicles over the highways by or in connection with the service of such carriers, where highway transportation has been substituted by or for such carrier prior to January 1, 1935, for transportation service previously performed by such carrier or is to be substituted for transportation now performed by or for any such carrier. Hearings shall be ordered by the commission on every such application and notice thereof shall be given in such manner and to such persons, firms and corporations as the commission deems necessary at least 7 days prior to the date fixed therefor. If, after such hearing, the commission shall find that the operation is a service which regularly has been performed by or for such carrier prior to and since January 1, 1935, it shall grant a certificate of public convenience and necessity as a matter of right, and in cases where such service regularly has been performed by or for any such carrier prior to January 1, 1935, the service lawfully may be continued pending the issuance of such a certificate, provided application for such a certificate is filed with the commission within 15

days after July 6, 1935; but if such service has not been regularly performed prior to and since January 1, 1935 such a certificate shall be issued only if the commission shall find that the public convenience and necessity require and permit such operation."

The protestants contend that Sec. 20 is the controlling statute under the circumstances of this case. Sec. 20 reads in part as follows:

"No person, corporation, partnership, railroad, street railway or other transportation company shall operate, or cause to be operated, any motor vehicle or vehicles not running on rails or tracks upon any public way in the business of transporting freight or merchandise for hire as a common carrier over regular routes between points within this state without having obtained from the commission a certificate declaring that public necessity and convenience require and permit such operation. ------- In determining whether or not such a certificate shall be granted, the commission shall take into consideration the existing transportation facilities and the effect upon them, the public need for the service the applicant proposes to render, the ability of the applicant efficiently to perform the service for which authority is requested, conditions of and effect upon the highways involved and the safety of the public using such highways. No such certificate shall be issued unless and until the applicant has established to the satisfaction of the commission that there exists a public necessity for such additional service and that public convenience will be promoted thereby."

The petitioner says that it is seeking relief under Sec. 25 on the basis that it is performing a substituted service and that "the public convenience and necessity require and permit its operation."

It is obvious that Sec. 25 applies to a railroad which is performing a carrier service and desires permission to sub-

stitute highway transportation for rail service. It is equally clear that if, after application and hearing, the Commission finds "that the public convenience and necessity require - - - - such operation" it shall issue a permit allowing substitution of highway transportation for that of rail. Sec. 25 *requires proof of public convenience and necessity* unless the substituted service had occurred previous to January 1, 1935.

Sec. 20 provides:

"No person, corporation, partnership, railroad, street railway or other transportation company shall operate, or cause to be operated, any motor vehicle or vehicles not running on rails or tracks upon any public way in the business of transporting freight or merchandise for hire as a common carrier over regular routes between points within this state without having obtained from the commission *a certificate declaring that public necessity and convenience require and permit such operation.* - - - - - - -." (Emphasis supplied.)

In Sec. 20, as in Sec. 25, no certificate shall be issued "unless and until the applicant has established to the satisfaction of the Commission that there exists a public necessity for such additional service and that public convenience will be promoted thereby."

There seems to be no reason to determine that the words, "public convenience and necessity" are to have any different meaning or shades of meaning as applied to Sec. 25 than they do in light of Sec. 20. Under either section the burden is on the petitioner to prove public convenience and necessity and lacking such proof, petitioner cannot prevail.

The proof which the statute requires of convenience and necessity is the convenience and necessity of the public as distinguished from that of the individual or group of individuals. In re *John M. Stanley, Exceptant,* 133 Me. 91;

*Chapman re Petition to Amend,* 151 Me. 68; *Ballard, Re Contract Carrier Service,* 152 Me. 158.

What does the record disclose as to proof of public convenience and necessity? A number of persons testified who operate businesses which have been served by the petitioner in the delivery of meat products. Some of them testified as to their needs and requirements of the delivery of meat. There is evidence of the availability of common carrier truckers from Bangor to the towns served by the Bangor & Aroostook who are adequately equipped to carry the traffic on Monday nights or on any other nights in the week. The area could and would be properly served by the established highway transportation facilities now in force. It is the opinion of this court that the degree of proof which is necessary to establish public convenience and necessity is lacking in this case. In other words, the factual findings of the majority of the Commission, viz.:

"We find that the present and future public convenience and necessity require the operation by applicant as a common carrier by motor vehicle for the transportation of meats between Northern Maine Junction in the Town of Hermon and points and places located on the lines of the Bangor and Aroostook Railroad Company in Aroostook County and the Towns of Patten and Sherman Station, departing said Northern Maine Junction Monday nights and delivering said points and places Tuesdays, and further, that such convenience and necessity require the amendment of item 'H' of said Certificate No. 137 to provide for the transportation of meats as hereinafter set forth."

are not supported by any substantial evidence.

"If a factual finding, basic of an order of the Commission, is supported by any substantial evidence, that is, by such evidence as, taken alone, would justify the inference of the fact, the finding is final. *Hamilton vs Caribou, etc., Company, 121*

*Me. 422, 424.* Here, as with a jury verdict, a mere difference of opinion between court and commission in the deductions from the proof, or inferences to be drawn from the testimony, will not authorize the disturbance of a finding." *Gilman, et al vs Somerset Farmers Co-Operative Telephone Company, et al, 129 Me. 243-248.*

This court in *Public Utilities Commission* v. *Johnson Motor Transport,* 147 Me. 138, at page 143, said:

"The Law Court is not an appellate court from the Public Utilities Commission to retry questions of fact. Facts found by the Commission are not open in this court, unless the Commission shall find facts to exist without any substantial evidence to support them. If a factual finding, as a basis for an order by the Commission, is supported by any substantial evidence, the finding is final. - - - - - - - 'Substantial evidence' is such evidence as taken alone would justify the inference of the fact."

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co., et al vs National Labor Relations Board, et al, 305 U. S. 197, 229.*

In view of the fact we have determined that the same test of public convenience and necessity must be applied to applications under either Sec. 20 or 25 and that the petitioner has failed to prove public convenience and necessity, there is no requirement for us to construe the word "substitution" as it is used in Sec. 25.

The entry in each case will be,

*Exceptions sustained.*