BANGOR & AROOSTOOK RAILROAD CO. RE: APPLICATION
TO AMEND P. U. C. CERTIFICATE J #44

Kennebec.    Opinion, March 4, 1963.

*William M. Houston,* for B. & A. Railroad Co.

*Raymond E. Jensen,* for Intervenors.

*John G. Feehan,* for P. U. C.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

MARDEN, J. On exceptions. The petitioner, hereinafter referred to as "B & A," presently holder of certificate J-44, for the carrying of passengers for hire from Bangor into Aroostook County seeks authority to transport "baggage, mail and express" in its passenger motor vehicles under the provisions of Section 5 of Chapter 48, R. S. B & A supports its petition by introducing evidence of what it terms as the inadequacy in the freight delivery service in Aroostook County by reason of such scheduling and operation of the common carriers of freight whereby, in substance, any merchandise offered in Bangor for shipment after noon of a given day does not reach the consumer in Aroostook County until the following day, and as to some of the existing freight carriers "overnight" delivery is scheduled, though the merchandise is offered in Bangor for shipment as early as 7 o'clock on a given morning. B & A presented witnesses in various merchandising fields and located in Brewer, Bangor, Lincoln, Van Buren, Millinocket, and Presque Isle, who pointed out that in their respective businesses "same day delivery" was not only important to their consumer public, but with relation to drugs, spare parts for oil burners in winter, and refrigerators in summer, and automotive equipment "same day delivery" became at times a matter of emergency; that the movement of such items upon an "express" basis at premium rates would not seriously com-

pete with existing common carriage; that, as distinct from common carriage of freight, B & A contemplated no pickup and delivery service and that such additional authority was in the public interest.

This petition is opposed by four common carriers of freight hereinafter called "protestants" serving part or all of the geographical area involved, which carriers contend that such extended service by B & A is neither in the public interest nor a matter of convenience and necessity; that such extended authority would seriously invade the volume of their carriage of and operating revenue on similar items and that the petition should be denied.

The Public Utilities Commission by majority decree granted the extension of B & A's certificate to include baggage, mail and express, subject to restrictions as to the size and weight of the express packages to be so carried, which point is not pivotal.

Protestants have filed eight exceptions, the first five of which challenge the validity of the decision in the light of the evidence presented, the sixth challenges the expressed opinion "that the presenting of further witnesses would not have produced a record substantially different from that now before us except the list of commodities may have been broader and repetitious reasons advanced for using such service" and contends that the Commission was improperly projecting the evidence and, therefore, that any finding based upon such projection was invalid; the seventh questions the propriety of the Commission's considering the effect of such extended authority on B & A's operating revenue as within "the public interest" and eighth, the granting by the Commission of the right to B & A to transport mail and baggage in, what protestants aver is, the absence of evidence in the case bearing upon either of those items.

It is conceded that if the factual finding upon which the Commission decree is based is supported by such evidence as taken alone would justify their conclusion, its finding is final. *B. & A. R. R. Co., Petr.,* 157 Me. 213, 221; 170 A. (2nd) 699; *Richer, Re: Contract Carrier Permit,* 156 Me. 178, 183; 163 A. (2nd) 350.

Issue is raised as to the interpretation of certain phrases in Section 5, Chapter 48, R. S., the application of which governs our consideration of the problem.

The second sentence of Section 5, Chapter 48, R. S., provides that the Public Utilities Commission shall issue an original certificate (permitting operation of motor vehicles for profit) *or amend* (emphasis supplied) a certificate (permitting such operation) only if it finds after public hearing that public convenience and necessity require such operation. In 1959 this section was amended by adding the following paragraph:

> "The commission also may authorize transportation of baggage, mail and express for hire in passenger motor vehicles in such cases as the said commission, after notice given to motor carriers operating under sections 19 to 32 and to the extent therein provided, and after hearing, at which persons protesting shall be heard on such matters as may be applicable under this or other laws, finds the transportation of baggage, mail and express for hire in passenger vehicles to be *in the public interest.* Such authority shall be made a part of the certificate of public convenience and necessity described above and may be made subject to such terms, conditions and restrictions as said commission may prescribe." (Emphasis supplied.)

B & A contends that its privilege to extend its certificate turns upon the requirement of "the public interest" as used in the reference paragraph. Protestants urge that the extension of B & A's authority must be based upon "public

convenience and necessity" as used in Section 5 and that as applied to this case the phrase "in the public interest" and the phrase "public convenience and necessity" are synonymous.

Before determining whether the decision of the Commission is supported by substantial evidence it is proper to record an interpretation of the phrases under consideration.

It has been determined that the word "public" as used in carrier cases is the general public as distinguished from any individual or group of individuals, *Merrill* v. *P. U. C.,* 154 Me. 38, 41; 141 A. (2nd) 434; *M. C. R. R. Co.* v. *P. U. C.,* 156 Me. 284, 286; 163 A. (2nd) 633; and we conclude that the whole public as applied to this case consists of that body of persons, that public community, served by the common carriers here involved. *Fornarotto* v. *Board of Public Utility Com'rs.* (N. J. 1928), 143 A. 450, 453 (headnote 5).

Our court has defined "public convenience and necessity" in *Re: John M. Stanley,* 133 Me. 91, 93; 174 A. 93; followed in *Chapman, Re: Petition to Amend,* 151 Me. 68, 71; 116 A. (2nd) 130.

The phrase "public interest" appears in the second paragraph of Section 23 and subparagraph III of the same section of Chapter 48, R. S. as applied to contract carriers, in a context not synonymous with public convenience and necessity and has been a subject of discussion in *Merrill* v. *P. U. C.,* 154 Me. 38, 43; 141 A. (2nd) 434, and in *M. C. R. R.* v. *P. U. C.,* 156 Me. 284, 286, 291; 163 A. (2nd) 633; confirming non-synonymity.

Upon its face the pre-1959 portion of Section 5, Chapter 48, and the 1959 amendment do not reconcile. Inasmuch as the phrase "public interest" appears in other sections of the public utility law and used in a sense distinct from

"public convenience and necessity" we conclude that its use in the 1959 amendment of Section 5, was intended to have a meaning unto itself.

> "If there is an irreconcilable conflict, the amendatory act will control, as being the latest expression of the legislature." 82 C. J. S., Statutes § 384, Page 897.

See also *Crawford* v. *Iowa State Highway Commission* (Iowa 1956), 76 N. W. (2nd) 187, 190 (headnote 6, 7).

> "It is a general rule that a material change of a statute by amendment thereof evidences a purpose and intent to change the effect of the existing law." *Haraburda* v. *U. S. Steel Corporation*, 187 F. Supp. 79, 83 (headnote 3).

We hold that the phrases "public interest" and "public convenience and necessity" as used in Section 5 of Chapter 48, R. S., are not synonymous, that the phrase "public interest" is of broader scope than "public convenience and necessity." *In re Megan* (S. D. 1942), 5 N. W. (2nd) 729, 735 (headnote 22, 23); *Briggs Corp. v. P. U. C.* (Conn. 1961) 174 A. (2nd) 529, 532 (headnote 6).

Matters "in the public interest" as applied to carriers under Public Utilities law involve adequate service to meet the needs of the public community involved; *Briggs, supra* at 532, a consideration of the carrier competition; *In re Bermensolo* (Idaho 1960), 352 P. (2nd) 240, 242 (headnote 2, 3), the interests of competing carriers; *Ratner* v. *United States of America* (Ill. 1957), 162 F. Supp. 518, in which respect the interest of the petitioner to the extent that the extended service may contribute to the successful transportation of passengers, was not improperly considered by the Commission. The fact that an extension of B & A Certificate J-44 will reduce the volume of carriage and revenue of competing carriers is not controlling.

*Richer, Re: Contract Carrier Permit,* 156 Me. 178, 187; 163 A. (2nd) 350.

With the phrase "in the public interest" as used in the last paragraph of Section 5 of Chapter 48, R. S., so defined, and applied to the public community involved, we conclude that the factual finding by the majority of the Commission as to express shipments including the specified size of packages authorized was based upon substantial evidence and that exceptions one through five, inclusive, must be overruled.

As to exception six, it is clear that the Commission is not permitted to base a decision upon facts outside the record, *P. U. C.* v. *Cole's Express,* 153 Me. 487; 138 A. (2nd) 466, and we having found that the factual conclusion reached by the Commission as to express shipments is justified by the evidence, that portion of the finding challenged by exception six was gratuitous and of no moment. This exception is overruled.

Exception seven criticizes the acceptance of B & A's testimony as to the significance of the increased revenue resulting from the extended service proposed as relevant to the issue. We hold that such evidence is a matter to be considered properly under "the public interest" as defined above, and as to express shipments, this exception must fail.

While the statute granting the protestants right to "except" as to matters of law (Section 67, Chapter 44, R. S.) does not specifically provide that aggrievement is prerequisite (as in Section 32 of Chapter 153 relative probate appeals, for example) it is implicit in the law that an exceptant must show wherein he is aggrieved by the rulings which he attacks.

"The bill of exceptions, except in cases where it is claimed that facts were found without any evi-

dence, should show wherein the excepting party was aggrieved by the alleged rulings." *P. U. C.* v. *Gallop,* 143 Me. 290, 298, 62 A. (2nd) 166.

The protestants here do not represent how they are aggrieved by the license to B & A to carry mail and baggage,—and we do not see at this time how they could demonstrate any legal interest in the carriage of mail. This exception, therefore, must stand or fall on the presence or absence of evidence in the record from which "the public interest" in the carriage of mail and baggage may be found.

B & A did not request the Commission to take official notice of "the public interest" in the carriage of mail. See *P. U. C.* v. *Cole's Express,* 153 Me. 487, 498, 138 A. (2nd) 466. We find, however, in the record, testimony on behalf of B & A to the point that "mail is a primary interest" and successful bidding by B & A on transportation of mail for some "Star routes * * * has added substantially to" its revenues. We have already found and declared that the revenue aspect of this proposed service, as it may beneficially affect the successful carriage of passengers, is relevant to "the public interest," *supra.* We find that the evidence offered as to "the public interest" in the transportation of mail justifies the finding of the Commission. Exception eight is overruled as to the carriage of mail.

We find no evidence bearing upon "the public interest" in the carriage by B & A of baggage and although the protestants have not demonstrated any aggrievement by virtue of this extended license to B & A, we are not unaware that baggage not accompanying its owner as incidental to passenger carriage might become a subject of express (*American Railway Express Company* v. *Wright,* 91 So. 342, 343 (Miss. 1922)) transportation, by choice of its owner, or freight (*People* v. *Ackert,* 63 N. Y. S. (2nd) 118, 119) transportation, either by reason of its exceeding the size

and weight limitations imposed herein upon B & A as to the carriage of express, or by choice of its consignor, in which category the protestants do have a statutory interest. Exception eight is sustained as to the carriage of baggage.

> *Exceptions one through seven are overruled as to carriage of express.*
>
> *Exception eight is overruled as to carriage of mail.*
>
> *Exceptions one through eight are sustained as to carriage of baggage.*
>
> *Case remanded to the Public Utilities Commission for a decree upon the existing record in accordance with this opinion.*