Ruthanne SINGAL

v.

CITY OF BANGOR and Nite Owl, Inc.

Supreme Judicial Court of Maine.

Argued Jan. 4, 1982.

Decided Feb. 9, 1982.

Gross, Minsky, Mogul & Singal, George C. Schelling (orally), Bangor, for plaintiff.

Twitchell, Linscott & Badger, Frederick J. Badger, Jr., Orman G. Twitchell (orally), Bangor, for defendants.

Before McKUSICK, C. J., GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

The defendant Nite Owl, Inc.[1] appeals from a decision of the Superior Court, Penobscot County, in an 80B proceeding that reversed a decision of the Bangor Zoning Board of Appeals. The Board had granted Nite Owl's application for a permit to install two self-service gasoline pumps and underground storage tanks as an accessory, customarily incidental and subordinate use

---

1. The City of Bangor is not appealing the deci- sion of the Superior Court.

on the same lot, to the operation thereon of a grocery/superette at the corner of Broadway and Burleigh Roads, in Bangor, Maine, the area being zoned C–1 as a neighborhood commercial zone under the city's ordinance. Nite Owl challenges the Superior Court's decision on the grounds that summary judgment was inappropriate in this case and that the court misconstrued the zoning ordinance. We find no merit in the appellant's arguments and therefore deny the appeal.

*Standing*

Before discussing the issues raised on appeal, we must first determine whether Ruthanne Singal, the appellee, initially had the necessary standing to appeal the Board's decision. 30 M.R.S.A. § 2411(3)(F) provides that, in zoning cases,

> [a]n appeal may be taken, within 30 days after the decision [of the Board of Zoning Appeals] is rendered, by any *party* to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B. The hearing before the Superior Court shall be without a jury. (Emphasis supplied).

Rights of appeal from decisions of administrative tribunals are statutory, and capacity of any appellant to prosecute an appeal therefrom, *i.e.* standing to appeal, must needs depend on the particular wording of the specific appeal statute involved. The reference zoning appeal statute gives appeal standing to a *party* at the administrative level, *i.e.* before the administrative agency, here the Zoning Board of Appeals. Not only must it appear that the appellee, Ruthanne Singal, was a party before the Board, but she must further demonstrate that by reason of the Board's action or inaction she suffered a particularized injury. *See Matter of Lappie*, Me., 377 A.2d 441 (1977).

■ Even though the issue of standing was not raised by the parties, the matter is jurisdictional and will be examined by the court on its own motion for the first time at the appellate level. *McNicholas v. York Beach Village Corp.*, Me., 394 A.2d 264, 266 (1978). *See also Desmond v. Persina*, Me.,

381 A.2d 633, 637 (1978); *State v. Joey F.*, Me., 438 A.2d 1273 (1982). Indeed, deficiency in standing to appeal, whether arising from failure of party status before the agency or from the absence of particularized aggrievement as a result of agency action or inaction, gives rise to a lack of subject-matter jurisdiction in the courts sitting on appeal, whether at the initial appellate level in the Superior Court, or at the final stage of the appeal in the Law Court. *See Walsh v. City of Brewer*, Me., 315 A.2d 200, 210–11 (1974).

■ This Court has already construed the term "party" as used by the Legislature in 30 M.R.S.A. § 2411(3)(F), the zoning appeal statute. We viewed the statutory scheme as using the word "party" in the broad sense of meaning any participant in the proceedings who is aggrieved by the action or inaction of the zoning board of appeals. *Pride's Corner Concerned Citizens Assn. v. Westbrook Board of Zoning Appeals*, Me., 398 A.2d 415, 417–18 (1979).

■ The appellee in the instant case did appear by her attorney at the hearing on Nite Owl's application before the Zoning Board of Appeals, where, as an owner of property and resident on Burleigh Road in Bangor in the neighborhood of the proposed business undertaking, she opposed a construction of the pertinent ordinance provisions which would permit the sale of gasoline from two self-service pumps with storage tanks as an accessory use in connection with the operation of a grocery/superette at the corner of Burleigh and Broadway Roads in a neighborhood commercial zone classified as C–1. Through her attorney she participated in the proceedings in opposition to the grant of a permit to Nite Owl, arguing strenuously to the Board that the zoning ordinance if properly interpreted did not allow the sale of gasoline in a C–1 zone.

Nite Owl's appeal of the Code Enforcement Officer's denial of its application for a permit to install the gasoline pumps and tanks undoubtedly caused the Zoning Board of Appeals pursuant to Article 24, Section 2(a) of the zoning ordinance to notify by

U.S. mail all abutting owners and owners of properties within 100 feet of the exterior boundaries of the appellant's property. Presumably, Singal's status as a proper party in opposition was knowingly recognized by the Board and, thus, her capacity to appeal to the Superior Court from the Board's adverse decision by reason of her participation in the administrative hearing must follow, provided the record also shows that she suffered a particularized injury from the Board's decision.

It is generally conceded that the operation of gasoline service stations do cause such problems in the vicinity as traffic congestion, noise, danger of fire and depreciation of surrounding property values. *See, e.g. P. Rohan*, Zoning and Land Use Controls, § 40.04(4) (1981). The sale of gasoline from self-service pumps at an island in front of a grocery/superette establishment, although different in degree from such commerce at full-fledged gasoline service stations, do pose similar problems of traffic congestion, noise, fire hazards and property depreciation of some consequence. Given the potential for such a particularized injury of some appreciative magnitude, the appellee is an aggrieved party having standing to seek judicial review of the Board's decision. *Pride's Corner Concerned Citizens Assn., supra*, at 418; *Matter of Lappie, supra*, at 443.

### Summary Judgment

Under Rule 56(c), M.R.Civ.P., summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a party is entitled to a judgment as a matter of law. Nite Owl argues that the issue, whether or not the sale of gasoline by means of the operation of self-service pumps as an accessory use to the operation of a grocery/superette is permissible in a C–1 zone under the zoning ordinance of the City of Bangor, is one of fact on which the parties are in disagreement, and that this legally precluded the grant of summary judgment as was done in this appeal at the Superior Court level. We disagree.

This Court has consistently held that the meaning of terms or expressions in zoning ordinances calls for the construction of legislation and is a question of law for the court. *LaPointe v. City of Saco*, Me., 419 A.2d 1013, 1015 (1980); *Moyer v. Board of Zoning Appeals*, Me., 233 A.2d 311, 318 (1967). Whether a proposed use, principal or accessory, falls within a given categorization contained in zoning regulations is a question of law, on which the zoning board's determination as well as that of the single justice is subject to review. *Moyer, supra*, at 318. Hence, summary judgment was appropriate in the present appeal under Rule 56(c), M.R.Civ.P.

### Construction of the Ordinance

The Bangor zoning ordinance provides that a grocery/superette is a permitted use in a C–1 zone. Also permitted are accessory uses on the same lot with, and of a nature customarily incidental and subordinate to, the principal use, here a grocery/superette. Although neither grocery nor superette is defined by the ordinance, Article 3, Section 1 thereof ordains that terms not defined shall have their customary dictionary meanings. Webster's Third International Dictionary used by the Presiding Justice to construe the ordinance defines "superette" as a supermarket operating on a scale smaller than usual as measured by space occupied or outdoor storage, and "grocery" as a place of business of a retail grocer. Supermarket, on the other hand, is defined as a departmentized self-service chain or independent retail market that sells foods, convenience goods and household merchandise arranged in open mass display. The question then becomes whether gasoline fits into the category of goods sold by a superette, *i.e.* a grocery store or small supermarket. Although the appellant argues that "goods" is a category broad enough to encompass gasoline, we find it so broad as to be virtually meaningless in helping to determine exactly what was intended to be sold in a grocery/superette.

When a term of a zoning ordinance is ambiguous or uncertain, the court should construe that term reasonably "with regard both to the objects sought to be obtained and to the general structure of the ordinance as a whole." *LaPointe v. City of Saco*, 419 A.2d at 1015; *Robinson v. Board of Appeals, Town of Kennebunk*, Me., 356 A.2d 196, 198 (1976); *Moyer v. Board of Zoning Appeals*, Me., 233 A.2d at 317. It is through consideration of the whole ordinance that the legislative intent can be ascertained.

Our examination of the Bangor zoning ordinance convinces us that the sale of gasoline was not intended as a permitted use in a C–1 zone. The ordinance is highly restrictive in its treatment of gasoline service stations, permitting them only as special exceptions in the heavier C–2, C–3 and C–4 commercial zones, when the applicant can demonstrate, among other things, that the health, safety, welfare and property values of the neighborhood will not be affected. Since many of the same dangers necessitating restrictions on gasoline service stations are inherent in the self-service sale of gasoline, it would be unreasonable to conclude that the sale of gasoline was intended either as the primary business of, or as a use accessory to, a grocery/superette. Otherwise, a use considered undesirable for many reasons even in heavy commercial zones would be permitted without restriction in a neighborhood commercial zone.

We note further that the Bangor zoning ordinance in controlling land uses in C–1 neighborhood commercial zones, in its statement of purposes, expressly limits these land uses primarily to *small* service businesses and retail stores, such as (section 3 of article 11) grocery/superettes, delicatessens, drug stores, self-service laundromats, laundry pick-up stations, etc., plus "accessory uses on the same lot and customarily incidental to and subordinate to the above uses." The stated accessory use clause does not expressly permit, in connection with the operation of the enumerated small service businesses and retail stores, accessory structures as other parts of the ordinance may provide in other zones. A structure, principal or accessory, as defined by the ordinance is

"[a]nything constructed or erected with a fixed location on the ground or attached to something having a fixed location on the ground, *including but not limited to*, mobile homes, buildings, walls, fences, billboards, signs, piers and floats." (Emphasis added).

In a Neighborhood Commercial Zone, section 3 of article 11 further provides that

"no business may be conducted in a structure with more than 2000 square feet in gross floor area, and no goods or materials may be displayed or stored outdoors, except *goods or materials of a seasonal nature* displayed for retail sale and such outside storage display area may not exceed 1% of the gross floor area of the building." (Emphasis provided).

It is obvious that gasoline used in the operation of motor vehicles would not come within the meaning of "goods or materials of a seasonal nature" and, thus, under the provisions of the ordinance, could not be displayed for retail sale and stored in cans, casks, vats, tanks or other types of containers, located on the surface of the ground outside the principal business structure. We believe it would be against the comprehensive spirit of the ordinance as above indicated to view the sale of gasoline from pumps and tanks attached to a concrete foundation or otherwise bolted into the ground as permissible as an accessory use to the business of grocery/superette. Also, gasoline pumps, having a fixed location on the ground, must be viewed as structures under the ordinance, on a par with "walls, fences, billboards, [and] signs" specifically mentioned in the ordinance. We hold that the sale of gasoline in a C–1 zone was not an accessory use to the operation of a grocery/superette under the zoning ordinance of the City of Bangor.

The parties have brought to our attention the amendment of the ordinance on May 12, 1980, which specifically prohibits the sale of gasoline in a neighborhood commercial zone. This amendment was enacted by the

City Council of the City of Bangor and consisted in deleting from the ordinance the category "grocery/superette" as a permitted use in a C–1 zone and inserting instead thereof "grocery store not including the sale of motor vehicle fuel." The appellant argues that this change in the ordinance made pending appeal from the Board's decision to the Superior Court, unless the contrary clearly appears, evidenced a purpose and intent on the part of the City Council to change the effect of the existing law. *Matheson v. City of Portland*, Me., 288 A.2d 476, 478 (1972) and *In Re Bangor & Aroostook Railroad Co.*, 159 Me. 86, 188 A.2d 485, 489 (1963) are cited for that proposition. The appellee countered with the case of *Fahey v. City Council of City of Sunnyvale*, 208 C.A.2d 667, 25 Cal.Rptr. 314, 319 (1962) which stands for the rule that, when an amendment is only for the purpose of clarification, it is merely a restatement of the prior law in a clearer form and the law as it existed prior to the amendment remains the same after it.

In *Mundy v. Simmons*, Me., 424 A.2d 135, 137 (1980), we did say that, *at times,*

> when there is ambiguity in prior legislative terminology, enactments by a subsequent legislature may throw light on the legislative intent underlying previously enacted legislation and may be taken into consideration in dissipating the uncertainty of a foundational statute.

The same rule would apply respecting ordinances enacted by the legislative bodies of municipalities.

 Because of the change in the ordinance, however, we have had to consider, as we must, the question of mootness, since it is a well-settled principle that legislation passed during the course of litigation may render moot, or unnecessary, a determination of the existing controversy by supplanting the gravamen of the complaint. *See Thomas v. Zoning Bd. of Appeals, etc.*, Me., 381 A.2d 643, 646 (1978). We are satisfied that the case is not moot, since the dismissal of Singal's appeal from the Board's decision in favor of Nite Owl on the ground of mootness would give the administrative decision effectiveness which under a proper interpretation of the ordinance it would not possess. *See W. W. Cross & Co. v. National Labor Relations Board*, 1st Cir., 174 F.2d 875 (1949).

We do conclude that, from the comprehensive structure of the Bangor zoning ordinance and its self-consistency when all its parts are considered together, it clearly appears that the permitted use of grocery/superette in a neighborhood commercial zone as provided by the ordinance prior to its amendment on May 12, 1980 did not allow the sale of gasoline as an accessory use and that the subsequent amendment merely reflected a clarification of the law as it existed at the time of Nite Owl's application to the Board.

The entry will be:

Appeal denied.

Judgment affirmed.

All concurring.