STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss.                                     CIVIL ACTION
                                                    DOCKET NO. AP-17-36

BAY FERRIES, LTD.,                      )
                                        )
            Plaintiff                   )
                                        )
                                        )          ORDER ON DEFENDANT
      v.                                )          PORTLAND PILOTS' MOTION FOR
                                        )          FURTHER FINDINGS AND
BOARD OF COMMISSIONERS FOR              )          CONCLUSIONS OF LAW AND
THE PORT OF PORTLAND                    )          RELIEF FROM ORDER ON
                                        )          PLAINTIFF'S MOTION FOR
      and                               )          PRELIMINARY INJUNCTION
                                        )
PORTLAND PILOTS, INC.,                  )
                                        )
            Defendants.                 )

Before the Court is Defendant Portland Pilots' ("Pilots") motion for further findings and

conclusions of law and relief from Order on Plaintiff Bay Ferries' ("Bay Ferries") motion for

preliminary injunction. Pilots urges the Court to reconsider its March 14, 2018 injunction.

Although the Court still finds cause to grant the preliminary injunction, the Court will amend its

May 14, 2018 Order in accordance with Pilots' request, as outlined below.

In support of the grant of the preliminary injunction, the Court makes the following

findings of fact and conclusions of law. A party seeking a preliminary injunction bears the burden

to demonstrate that "(1) it will suffer irreparable injury if the injunction is not granted; (2) such

injury outweighs any harm which granting the injunctive relief would inflict on the other party;

(3) it has a likelihood of success on the merits (at most, a probability; at least, a substantial

possibility); and (4) the public interest will not be adversely affected by granting the injunction."

*Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 9, 837 A.2d

129.

STATE OF MAINE
Cumberland ss Clerk's Office

JUN 11 2018 8:30AM

RECEIVED

Plaintiff-Matthew Warner, Esq. and
 Harold Pachios, Esq.
Defendant Portland Pilots-Twain Braden, Esq.
Defendant Board of Commisioners-Jennifer          1 of 4
 Thompson, Esq.

The Court finds Bay Ferries has demonstrated it will suffer irreparable harm if a preliminary injunction is not granted. The Court's finding is based primarily on Pilots' March 8, 2018 letter threating to arrest The Cat and to file a Notice of Claim of Lien with the National Vessel Documentation Center. If Pilots chooses this strategy to enforce the lien it claims to have for unpaid pilotage fees, Bay Ferries has no adequate remedy at law. Such actions would deprive Bay Ferries of the vessel it requires to conduct its business and would likely result in damage to Bay Ferries' credit, as well as cause harm to Bay Ferries' public reputation.

The Court further finds the harm Bay Ferries will suffer if the injunction is not granted is greater than the harm which granting the injunction will inflict on Pilots. If Defendants succeed on the merits of this appeal, the injunction will be lifted, and Pilots will be free to pursue collection of unpaid fees due under the May 2017 rate. As is desired by both parties, a preliminary injunction will merely preserve the status quo until this Court rules on the merits of this appeal.

The Court finds Bay Ferries has demonstrated a likelihood of success on the merits. The Board of Harbor Commissioners ("Commission") sets pilotage fees by rule, and the Commission is required to follow the rulemaking procedures detailed in P. & S.L. 1981, ch. 98, § 6, as amended by P. & S.L. 1993, ch. 34, when setting fees. The Court finds it likely that Plaintiff will succeed in demonstrating the Commission failed to follow proper rulemaking procedures when it purported to increase the minimum pilotage fee on May 11, 2017. The rulemaking procedures as outlined in the statute provide, in relevant part:

> The commission may not adopt any rule other than as an emergency without first presenting the rule to the Department of Transportation for review and comment. The commission shall send any proposed rules to the councils of [Portland and South Portland] at the same time the proposed rules are sent to the Department of Transportation. ... The rules are effective 45 days from the date on which notice of such rulemaking is sent to the city managers of Portland and South Portland, addressed to the city councils of the cities....

P. & S.L. 1981, ch. 98, § 6, as amended by P. & S.L. 1993, ch. 34. Pursuant to the statute, the Commission should have notified MDOT of the proposed fee increase for review and comment, and the new fee could not become not legally effective until 45 days after the Commission sent notice of the new fee to the city councils of Portland and South Portland.

The record is without evidence that such notice was ever sent to MDOT or to the city councils. Pilots disputes this fact but has presented no evidence on this issue to date. Responses to FOAA requests from Plaintiff to the City Clerks of Portland and South Portland appear to confirm the cities were not given notice of the proposed rate increase. Because the statute requires notice of the proposed rule to the cities of Portland and South Portland in order to trigger effectiveness of the rule, and because it appears such notice was not given, the new fee purportedly established by the Commission on May 11, 2017 likely never took effect.

Furthermore, in its March 14, 2018 Order denying Defendants' motions to dismiss, this Court found Plaintiff has standing to bring this claim due to a denial of due process by the Commission. *Bay Ferries, Ltd. v. Bd. of Comm'rs for the Port of Portland*, CUMSC-AP-2017-0036 (Me. Super. Ct., Cum. Cty., Mar. 14, 2018). That denial of due process further supports Bay Ferries' likelihood of success on this appeal.

Finally, the Court finds the public interest will not be adversely affected by granting the injunction. Neither party has argued this issue extensively, and the Court finds no reason to deny the injunction in the public interest.

As explained in the Court's May 14, 2018 Order, Plaintiff has shown good cause to waive the Rule 65(c) requirement that it provide security, because Defendants are unlikely to incur damages by the issuance of this injunction. As discussed above, the fee approved by the Commission on May 11, 2017 is not legally effective until 45 days after the Commission sends

notice of the new fee to the city councils of Portland and South Portland. Because the record contains no evidence that the Commission has sent notice to the cities of Portland or South Portland, the fee is likely not effective.

The preliminary injunction requested by Bay Ferries has been granted based on the foregoing. However, the Court is persuaded that its original order granting the injunction is unnecessarily broad, and a more narrowly tailored order will suffice to maintain the status quo as the parties have requested. Therefore, the Court's May 14, 2018 Order is amended to provide as follows:

Plaintiff's Motion for a Preliminary Injunction is GRANTED. The Board of Commissioners and Portland Pilots, Inc. are enjoined from enforcing against Bay Ferries, Ltd. the $1200 pilotage fee established by the Board of Commissioners on May 11, 2017, pending the conclusion of Bay Ferries' Rule 80B appeal, docket number AP-17-36. In the event that Bay Ferries' Rule 80B appeal is denied, this injunction will be lifted and the minimum pilotage fee established by the Board of Commissioners on May 11, 2017 will apply to all applicable pilotage services rendered in 2017.

Furthermore, the M.R. Civ. P. 65(c) requirement that Plaintiff provide security is hereby waived.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: _____6/8/18_____

_____
Lance E. Walker, Justice
Maine Superior Court

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-17-36

BAY FERRIES, LTD., )
)
Plaintiff )
)
v. )
)
BOARD OF COMMISSIONERS FOR )
THE PORT OF PORTLAND )
)
and )
)
PORTLAND PILOTS, INC., )
)
Defendants. )

ORDER ON DEFENDANTS'
MOTIONS TO DISMISS

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAR 14 2018
10:09 AM
RECEIVED

Before the Court are Defendants Board of Commissioners for the Port of Portland

("Board") and Portland Pilots' ("Pilots") motions to dismiss Plaintiff's Rule 80B appeal. A

hearing was held on these motions on February 5, 2018. For the following reasons, Defendants'

motions to dismiss are granted in part and denied in part.

I. Background

The following facts are primarily drawn from Plaintiff's complaint. Disputed facts are

noted where relevant to the Court's decision. Plaintiff operates a roundtrip ferry service between

Yarmouth, Nova Scotia and Portland, Maine aboard a vessel named HSV Alakai, commonly

referred to as "The CAT." The CAT operates seasonally five days a week. Each time The CAT

enters and departs from Portland Harbor, Plaintiff is required by state law to use a pilot approved

by Defendant Board. For its pilotage services, Plaintiff must pay to Defendant Pilots a minimum

pilotage fee, which is set by Defendant Board. During the 2016 season, this fee was $709.

In a March 23, 2017 letter, Pilots asked the Board to approve an increase in the minimum

pilotage fee from $709 to $1200 per voyage.[1] Pilots also requested a 1.2% increase of the

Plaintiff–Matthew Warner, Esq.
Defendant Portland Pilots–Twain Braden, Esq.
Defendant Board of Commissioners–
Jennifer Thompson, Esq.

Consumer Price Index rate and an adjustment to the fuel surcharge. The Board scheduled Pilots' request to be heard at a public hearing on April 13, 2017. On April 7, 2017, the Board emailed to Plaintiff's controller an agenda for the April 13 hearing. The items listed on the agenda were:

ITEM ONE:      CITGO dredging project at their dock in the Fore River
ITEM TWO:      Marine Event Application (Teens to Trails)
               Aug 26th in the upper Fore River (1 to 5 pm)
ITEM THREE:    Portland Pilot Cost of Living rate increase proposal

The agenda did not include a reference to the proposed minimum pilotage fee increase. The April 13 hearing was cancelled.

On May 4, 2017, the Board emailed Plaintiff's controller with an agenda for a May 11, 2017 public hearing. This agenda contained the same items as the agenda for the April 13 hearing, with a fourth item added for "58 Fore Street Marina Project." The May 11 hearing occurred as scheduled. Plaintiff was not in attendance. At this hearing, after brief discussion, the Board orally voted to increase the minimum pilotage fee to $1200. The Board never issued a written decision containing findings of fact and conclusions of law concerning the pilotage fee increase. Plaintiff alleges the Board never sent notice of the pilotage fee increase to the Maine Department of Transportation or to the city councils of Portland or South Portland.

Ten days after the May 11 hearing, Pilots sent notice to Plaintiff that the Board had approved a pilotage fee increase to $1200 effective June 1, 2017. On June 1, Pilots began charging the increased fee and threatened to arrest The CAT if Plaintiff did not pay the new fee. The parties expressed uncertainty at the hearing before this Court as to whether Plaintiff had actually paid the increased fee during the summer of 2017, but Plaintiff's complaint alleges it did

---

[1] The parties dispute when and how Plaintiff received a copy of this letter. Defendants allege it was mailed to Plaintiff on March 29, 2017. Plaintiff alleges it was obtained pursuant to a Freedom of Access Act request made in July 2017.

pay the increased fee and reserved the right to recoup the difference between the original $1418 fee and the increased $2400 fee per voyage.

Plaintiff filed its complaint for 80B appeal in this Court on August 24, 2017. Counts I and II allege the Board did not provide proper notice to necessary parties or the public of the hearing to increase the minimum pilotage fee. Count III alleges the Board did not follow required rulemaking procedures in establishing pilot compensation, which must be done by rule. Counts IV and V allege the fee increase is not supported by record evidence or findings and the Board did not make written findings of fact and conclusions of law. Count VI asserts an independent claim for relief pursuant to 42 U.S.C. § 1983 alleging the Board's procedure for approving the increased pilotage fee deprived Plaintiff of due process. Counts VII and VIII allege breach of contract and unjust enrichment by Defendant Pilots.[2]

II. Discussion

*A. Standing*

Defendant Pilots argues Counts I through V of Plaintiff's complaint should be dismissed because Plaintiff lacks standing to bring its claim due to its failure to participate at the hearing when the matter in question was presented to the public and voted upon by the Board.[3] "It is well established that in order to have standing to file an 80B appeal in the Superior Court, the appellant must prove (1) that it was a party at the administrative proceeding, and (2) that it

---

[2] Defendant Board has only requested dismissal of Counts I-VI. While Defendant Pilots' motion also purports to move for dismissal of "any independent claims asserted against Pilots" (Pilots Mot. Dismiss 1), its motion does not present any arguments supporting dismissal of Counts VII and VIII. In its reply to Plaintiff's opposition, Pilots only argues that Plaintiff's independent claims for relief will be moot if the 80B appeal is dismissed. Because the 80B appeal will not be dismissed, and any other arguments pertaining to dismissal of these counts have been inadequately briefed, the Court will not dismiss these counts at this time.

[3] The Board incorporated each of Defendant Pilots' arguments with respect to dismissal of Counts I-V into its motion by reference.

suffered a particularized injury as a result of the agency's decision." *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 11, 879 A.2d 1007.

There is little question that Plaintiff has suffered a particularized injury as a result of the rate increase. Although all parties at the hearing before this Court expressed some uncertainty as to whether Plaintiff had actually paid anything to Pilots under the new rates, even if Plaintiff has not paid the increased fee for the summer of 2017, Pilots' continued insistence on collecting the fee evidences a debt incurred by Plaintiff. Moreover, Pilots has repeatedly threatened to arrest The CAT if Plaintiff does not pay the outstanding expenses incurred during the summer of 2017. Plaintiff has suffered a particularized injury as a result of the Board's decision to increase the pilotage fee.

The more contentious question surrounds whether Plaintiff was a party at the administrative proceeding. The term "party" means "'any participant in the proceedings who is aggrieved by the action or inaction of the'" board. *Id.* ¶ 11 (quoting *Singal v. City of Bangor*, 440 A.2d 1048, 1015 (Me. 1982)). "'Participation' may be formal or informal, in person or through an attorney, ... and it does not demand that the party have initiated the municipal proceeding for which appellate review is sought." *Id.* (internal quotations and citations omitted). There is no dispute that neither Plaintiff nor a representative of Plaintiff was present at the May 11 hearing, nor did Plaintiff, by any means, raise an objection to the proposed rate increase prior to the hearing. Defendants contend Plaintiff's failure to participate in any capacity prior to the Board's decision deprives Plaintiff of standing to bring this appeal.

While Defendants are correct that "participation in the public hearing process is essential," (Pilots' Reply to Pl.'s Opp'n to Defs.' Mot. Dismiss 2), just as essential as a matter of due process is proper notice. "Notice and opportunity for hearing are of the essence of the due

process of law. ... The notice to which one is entitled under ... the Maine Constitution, and to constitute 'due process' under the federal Constitution is notice that is reasonably calculated to give him actual notice of the proceedings and an opportunity to be heard." *Michaud v. City of Bangor*, 159 Me. 491, 493-94, 196 A.2d 106, 108 (1963) (internal quotes omitted). The Court agrees with Plaintiff that "[i]f lack of participation—regardless of the reason—was an absolute bar to standing, interested parties would have no recourse when denied notice and an opportunity to be heard." (Pl.'s Opp'n to Defs' Mot. Dismiss 7.)

Plaintiff argues that it did not participate in the May 11 hearing because it did not receive notice of the subject matter of the hearing. The statute establishing the Board and detailing its powers and duties states, in reference to the Board's rulemaking power: "[T]he commission shall hold a public hearing, preceded by publication, as to the subject matter of the rule and the time and place of the public hearing, at least 7 days prior to the hearing." P. & S.L. 1981, ch. 98 § 6.

As detailed above, prior to the hearing originally scheduled for April 13, Plaintiffs received a hearing notice stating a hearing would be held concerning a "Portland Pilot Cost of Living rate increase proposal." After the April 13 hearing was cancelled, the notice Plaintiff received of the rescheduled May 11 hearing was again only for a "Portland Pilot Cost of Living rate increase proposal." However, in addition to approving the cost of living increase, the minimum pilotage fee increase was approved at the May 11 hearing. Thus, the notice of the May 11 hearing did not comply with P. & S.L. 1981, ch. 98 § 6 because it did not give notice of the subject matter of the hearing.

Defendants argue Plaintiff received notice of the subject matter when it received a copy of Pilots' request letter to the Board in March.[4] This letter contains Pilots' request for a 1.2%

Consumer Price Index rate increase, a fuel surcharge reduction, and a minimum piloting fee of $1200. Even if Plaintiff did receive a copy of this letter in March, it was insufficient to put Plaintiff on notice of the subject matter of the May 11 hearing. If Plaintiff did indeed receive a copy of the March letter, it would have been reasonable for Plaintiff to infer that the May 11 notice's exclusion of reference to the minimum pilotage fee was intentional and that the hearing was only going to address the cost of living increase, leaving the pilotage fee to be addressed at a later date. At the hearing before this Court, Pilots conceded that a cost of living increase is a fairly routine matter and typically results in a relatively small rate adjustment. Because the notice of the May 11 hearing only referenced a cost of living increase, it is unsurprising that Plaintiff would have declined to attend the hearing and raise an objection.

Because Plaintiff did not receive proper notice of the subject matter of the hearing wherein the pilotage fee was increased, and because Plaintiff has suffered a particularized injury due to the fee increase, Plaintiff has standing to bring an appeal based on its deprivation of due process.

*B. Subject matter jurisdiction*

Defendant Pilots also argues Plaintiff's complaint should be dismissed pursuant to M.R. Civ. P. 12(b)(1) because Plaintiff did not timely file its complaint in this Court. Pilots cites M.R. Civ. P. 80B(b)'s provision stating: "The time within which review may be sought shall be as provided by statute, except that if no time limit is specified by statute, the complaint shall be filed within 30 days after notice of any action or refusal to act of which review is sought...." Under this rule, Pilots argues Plaintiff's deadline to file its complaint was, at the latest, June 20, 2017, which is 30 days after Plaintiff received actual notice of the Board's decision.

---

[4] As noted above, Plaintiff's complaint alleges it did not receive this letter until July 2017 in response to a FOAA request.

Pilots also relies on Section 5.3 of the Rules and Regulations of the Board of Commissioners for the Port of Portland, Maine ("Board Rules") which states: "The time for taking an appeal from the decision will be computed from the date on which the decision was received by the applicant, either orally or in writing, whichever occurred first." Calculating the time for appeal under this provision, Plaintiff's complaint should have been filed within 30 days after May 11, 2017, the date of the hearing during which the Board orally issued its decision. Plaintiff did not file its complaint until August 24, 2017.

Plaintiff counters that a further provision of Rule 80B(b) is applicable in this case. That provision states:

> The time for filing of an appeal shall commence upon the date of the public vote or announcement of final decision of the governmental decision-maker of which review is sought, except that, if such governmental action is required by statute, ordinance, or rule to be made or evidenced by a written decision, then the time for filing of an appeal shall commence when the written decision has been adopted. If such written decision is required by statute, ordinance, or rule to be delivered to any person or persons, then the time for the filing of an appeal shall commence when the written decision is delivered to such person or persons.

Plaintiff argues this provision is triggered by Board Rules Section 5.3, which provides:

> If an oral decision should be rendered at the hearing, the Commission will provide a written decision within a reasonable time thereafter. The written decision will include conclusions of law and findings of fact that are sufficient to apprise the parties of the basis for the decision and shall specifically state what facts in the record were relied upon by the Commission. A copy of the written decision will be delivered or mailed to the party in interest and to the opponents, but not to proponents nor to persons who were determined to be interested parties but were neither proponents nor opponents.

Because Section 5.3 clearly requires the issuance of a written decision as contemplated by Rule 80B(b), Plaintiff argues its appeal is not foreclosed due to untimeliness because the Board has yet to adopt or deliver a written decision containing conclusions of law and findings of fact.

It is apparent that the time for appeal contained in Section 5.3 ("The time for taking an appeal from the decision will be computed from the date on which the decision was received by the applicant, either orally or in writing, whichever occurred first") conflicts with the time for appeal contained in Rule 80B(b). Under these circumstances, the Court finds the Board Rules must yield to Rule 80B. *Cf. Smith v. Town of Pittston*, 2003 ME 46, ¶ 24, 820 A.2d 1200 (municipal ordinance is preempted by state statute when ordinance "would frustrate the purpose of ... state law" and "prevent[] the efficient accomplishment of a defined state purpose" (internal quotations and citations omitted)).

Rule 80B(b) was amended in 2014 to add the written decisions provision "in response to the Law Court decision of *Gorham v. Androscoggin County*, 2011 ME 63, 21 A.3d 115." M.R. Civ. P. 80B advisory note to 2014 amend., June 2014, http://www.courts.maine.gov/rules_adminorders/rules/text/MRCivPPlus/mr_civ_p_80b_plus_20 14-9-1.pdf (last visited March 12, 2018). In *Gorham*, the Law Court noted written decisions facilitate important policy considerations by giving notice of the basis of an appeal to aggrieved parties ("[A] party might not recognize whether a grievance exists until an agency articulates its findings and rationale in a final written decision. Conversely, an agency's findings and rationale might persuade the aggrieved party to accept the agency's decision and forego judicial review.") and by promoting judicial efficiency ("[R]equiring parties with nascent grievances to file Rule 80B complaints pro forma to prevent losing their right of appeal is not an efficient use of judicial resources."). *Gorham*, 2011 ME 63, ¶¶ 15-16, 21 A.3d 115.

The Court finds the amendment to Rule 80B(b) preempts the conflicting provision in Board Rules Section 5.3. *See* M.R. Civ. P. 1 reporter's notes, December 1, 1959 ("[T]hese rules ... are promulgated under the authority of the rules enabling act ..., which expressly provides

that after they become effective 'all laws and rules in conflict therewith shall be of no further force or effect.'"); *see also* 4 M.R.S.A. § 8 (1977).

It is undisputed that following its May 11 oral decision, the Board failed to issue a written decision complying with Board Rules Section 5.3 and to date has yet to do so. As such, the Court agrees with Plaintiff that the time for appeal never began to run, and therefore Plaintiff's complaint is not subject to dismissal for untimeliness pursuant to M.R. Civ. P. 12(b)(1).

*C. Section 1983 claim*

The Board argues Plaintiff's section 1983 claim must be dismissed because the 80B appeal process provides Plaintiff with an adequate state remedy.[5] The Court agrees. "When a plaintiff has grounded his claims on procedural due process violations and adequate state-law remedies are available to prevent the alleged deprivation, the claims are not meritorious and must be dismissed." *Belanger v. Comm'r, Me. Dept. of Human Servs.*, No. AP-00-18, 2000 Me. Super. LEXIS 197, at *3 (Aug. 31, 2000). In *Belanger*, the plaintiff's procedural due process claim was brought in conjunction with an 80C appeal. *Id.* at *2. The Court dismissed the claim, finding a right to an 80C appeal was part of the process afforded to a party subject to final agency action. *Id.* at *3-4. Similarly, in this case Plaintiff's claim can be fully adjudicated within its 80B appeal, and therefore Rule 80B provides an adequate state remedy for addressing Plaintiff's grievances. *See Gorham*, 2011 ME 63, ¶ 22, 21 A.3d 115 ("With respect to independent claims that are not subject to Rule 80B, ... when direct review is available pursuant to Rule 80B, it provides the exclusive process for judicial review unless it is inadequate"). Thus, this claim must be dismissed.

III. <u>Conclusion</u>

---

[5] Pilots incorporated this argument into its motion by reference.

For the foregoing reasons, Defendants' motions to dismiss are GRANTED as to Count VI of Plaintiff's complaint (Section 1983 claim) and DENIED as to Counts I-V (80B claims) and Counts VII-VIII (breach of contract and unjust enrichment). The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 3/12/18

Lance E. Walker, Justice
Maine Superior Court